ANDREW W. PONTIUS, Plaintiff in Error, *v.* THE PEOPLE OF THE STATE OF NEW YORK, Defendant in Error.

The office of the writ of error in a criminal action is to bring up exceptions taken on the trial; it does not bring up for review questions presented upon a motion in arrest of judgment, as they form no part of the proceedings on trial.

When an indictment contains several counts, some good and some void for duplicity, a general verdict may be sustained upon the valid counts.

A count in an indictment for assault and battery with intent to kill, instead of alleging that the intent was " to kill," alleged that it was " to commit murder." *Held* good.

A count of an indictment setting forth the substance of the offense, with

the circumstances necessary to render it intelligible and to inform the accused of the allegations against him, is sufficient.

Upon trial of said indictment, the prosecution without objection gave in evidence certain notes, purporting to have been made or indorsed by H., the complainant, also a book of account; these, the witness producing them testified, came lawfully into his possession, at the prisoner's house, and in his presence. Testimony was then given by H. and others, showing that the signatures of H. to the notes were forged. H. was cross-examined at considerable length. Entries in the book of account were also read to the jury. After the case for the prosecution was closed the prisoner's counsel " moved that the court direct the jury to disregard all the evidence tending to establish the forgery," he admitting and asking it to be entered on the minutes, that if the jury should find that the prisoner committed an assault and battery, it was with intent to kill. The court denied the motion. *Held,* that an exception to the ruling was unavailing; that after acquiescing in the reception of the evidence, and improving the opportunity afforded by it for cross-examination, it was too late to ask to have the evidence stricken out.

Also, *held,* that the evidence was properly received, as showing motive, although it tended to prove the commission of another crime.

Where a party does not object to improper evidence offered, it is discretionary with the trial court whether or not to exclude it on motion.

*It seems,* that the remedy of the party is to ask for instructions to the jury that they should disregard the evidence.

An exception to the overruling of an objection to evidence, where the objection was made after the evidence has been received, is not available.

The prosecution gave evidence of declarations of the prisoner, made two days before the alleged assault, while he was examining a note signed by H., tending to show an intimate acquaintance on his part with the signature of H. *Held,* competent.

The account book received in evidence contained the handwriting of the prisoner. *Held,* that it was proper to permit the jury to examine the entries in said book, and to compare them with the alleged forged notes.

The prisoner was examined at length in his own behalf, asserting the genuineness of the notes, and that they were made in payment of moneys loaned by him to H. *Held,* that it was competent to inquire on cross-examination as to the sources from whence the prisoner procured the money to make the loans.

Also, that it was competent for the prosecution to prove any facts tending to show the improbability of the prisoner's statement, *i. e.,* his pecuniary necessities, the borrowing of money by himself, at or about the time of the alleged loans, the non-payment of small debts when due, after frequent requests, etc.

*People* v. *Crapo* (72 N. Y. 288), distinguished.

(Argued September 24, 1880; decided October 15, 1880.)

Error to the General Term of the Supreme Court, in the fourth judicial department, to review judgment affirming a judgment of the Court of Sessions, in and for the county of Seneca, entered upon a verdict convicting the plaintiff of the crime of assault and battery with intent to kill. (Reported below, 21 Hun, 382.)

The indictment contained ten counts, the last two of which are as follows:

"And the jurors aforesaid, upon their oaths aforesaid, do further present that the said Andrew W. Pontius, late of the town of Fayette, in the said county of Seneca, afterward, to wit: on the 27th day of January, in the year of our Lord 1879, at the town of Seneca Falls, in the county of Seneca, aforesaid, with force and arms, to wit: with a large rounded blunt stone (the same being then and there a dangerous and deadly weapon), which the said Andrew W. Pontius then and there in his right hand had and held, in and upon one John G. Hoster of Seneca Falls, in said county of Seneca, in the peace of God, and the said people, then and there being, then and there did make an assault, with intent to commit murder, on the said John G. Hoster, and did then and there cut, beat, strike, wound and evil treat him the said John G. Hoster, and other wrongs to the said John G. Hoster, then and there did, to the great damage of him, the said John G. Hoster, contrary to the form of the statute in such case made and provided, and against the peace of the people of the State of New York and their dignity.

"And the jurors aforesaid, upon their oaths aforesaid, do further present that the said Andrew W. Pontius afterward, to wit: on the 27th day of January, in the year of our Lord 1876, at the town of Seneca Falls, in the said county of Seneca, with force of arms, and not having the fear of God before him, in and upon the said John G. Hoster, in the peace of God and the said people, then and and there did feloniously, willfully and with a deliberate and premeditated design to effect the death of the said John G. Hoster, did make an assault, and that the said Andrew W. Pontius, with a certain stone of no

value (the same being then and there a dangerous and deadly weapon), which he, the said Andrew W. Pontius, then and there in his right hand had and held, in and upon the right side and toward the top and back of the head, three inches above the right ear of him, the said John G. Hoster, then and there feloniously and willfully and of his malice aforethought, did beat, cut, strike and wound, and that he, the said Andrew W. Pontius, with the stone aforesaid, so as aforesaid sued in cutting, beating and wounding the aforesaid John G. Hoster, then and there feloniously, willfully and of his malice aforethought and with deliberate and premeditated design to effect the death of the said John G. Hoster, did strike, wound, penetrate, beat the said John G. Hoster, in and upon the head of the said John G. Hoster, two wounds of the length of three inches each, and of the depth of one-half inch, which said wounds were likely to produce death, with the intent to kill and murder him, the said John G. Hoster, contrary to the form of the statute in such case made and provided, and against the peace of the people of the State of New York and their dignity."

The facts pertinent to the questions discussed appear sufficiently in the opinion.

*Samuel Hand* for plaintiff in error. As the indictment alleges an assault with a deadly weapon, with intent to kill, it was improper and unjust to permit the people to give evidence of forgery. (Wharton's Criminal law [2d ed.], 238 ; 2 Russell on Crimes, 772; *Van Pelt* v. *Magraw*, 4 N. Y. 110; *The People* v. *Olcott*, 1 Park. 252.) It was not proper evidence to go to the jury, what Hoster said about Pontius' house having been burned. (*Green* v. *Disbrow*, 56 N. Y. 371.) It was improper for this jury to examine the different J's in the index of the ledger, or to look at or compare any part of the index with the alleged forged notes. (*Van Wyck* v. *McIntosh*, 14 N. Y. 439.) When irrelevant evidence is offered it may be rejected at once, or the judge may let it in, and repudiate it if it shall fall short of any tendency to prove the issue. (*Weidler* v. *Bank*, 11 Serg. & Rawle, 134, 139.) The question to the defendant, how much was the undertaker's bill, in connec-

tion with the death of his child, was improper. (*Green* v. *Disbrow*, 56 N. Y. 334; *Daly* v. *Erickson,* 45 id. 791 ; *People* v. *Crops*, 76 id. 288.)    The criminal law does not permit the joinder of two or more distinct offenses in one count of an indictment.    (2 Colby's Criminal Law, 118 ; *The People* v. *Wright*, 9 Wend. 193; *Dawson* v. *The People*, 25 N. Y. 399, 402; *Reed* v. *The People*, 1 Park. 481.)

*Peter H. Van Auken* for defendant in error.    It was proper and competent to prove the facts tending to show a motive on the part of the prisoner to commit the crime. (*Stout* v. *The People*, 4 Park. Cr. 71; *People* v. *Wood*, 3 id. 681; *Pierson* v. *The People*, 18 Hun, 239, affirmed by Court of Appeals.) The forged notes were certainly competent on the question of motive. (*Beebe* v. *Bull*, 12 Wend. 504, 507; *Magee* v. *Badger*, 34 N. Y. 248; *Elton* v. *Markham*, 20 Barb. 343 ; *Caldwell* v. *Murphy*, 11 N. Y. 417; *Jones* v. *Osgood*, 6 id. 233.) It was competent and proper for both the witness and the jury to make the comparisons which they did make. (*Miles* v. *Loomis*, 75 N. Y. 288.)    It was competent and proper to show by the expert, Stevens, that the body of the $1,000 note and the signature were in the same handwriting. (*Haughey* v. *Wright*, 12 Hun, 180.)    It was competent to prove that the prisoner told the witness, in 1877, that he owed the complainant $6, which was to be paid from the $12 coming from Merritt, as corroborating the testimony of complainant. (*Nicholls* v. *Van Valkenburg*, 15 Hun, 230, 233.)    The ruling of the court that comparisons must be confined to papers in the case was correct. (*Van Wyck* v. *McIntosh*, 14 N. Y. 439; *Randolph* v. *Loughlin*, 48 id. 456 ; *Merritt* v. *Campbell* [Court of Appeals, January 13, 1880], 21 Alb. L. J. 153.)    The objection of the prisoner's counsel to the hypothetical question put to the physician, William A. Swaby, that it was not a question of scientific skill, one way or the other, was properly overruled. (*Koenig* v. *The Globe Mutual Life Insurance Co.*, 10 Hun, 558.)    It was material and competent to show the relations between the complainant and the prisoner, to show the

pecuniary condition of the prisoner at the time. (*Nicholls* v. *Van Valkenburg*, 15 Hun, 230, 233; *Dunn* v. *The People*, 29 N. Y. 523, 526; *Gardner* v. *The People*, 6 Park. Cr. 155.) The decision of the court on a motion in arrest of judgment is not the subject of exception. (*People* v. *Allen*, 43 N. Y. 28–32.) A bill of exceptions, in a criminal case, brings up for review no questions except those which arise on a trial of an indictment. (*Freeman* v. *The People*, 4 Denio, 21; *The People* v. *Gardner*, 6 Park. Cr. 155; *The People* v. *Allen*, *supra.*) An indictment containing one good count will sustain a general verdict of guilty, although there may be other defective counts therein. (*People* v. *Davis*, 56 N. Y. 95, 100.) A count in an indictment charging the use of different prohibited means to perpetrate the alleged crime, charging all as constituting the one offense specified, is good and sufficient. (*People* v. *Davis*, *supra*, 100, 101; *People* v. *Casey*, 72 N. Y. 393, 396, 397.)

DANFORTH, J. The case was left with the jury after a charge of unusual fullness, in which the rules of law were stated with great care and ability, and the question of fact fairly submitted to them for determination. It was not claimed by the learned counsel for the defendant that the evidence might not be so construed as to warrant a conviction, nor was any exception taken to the charge as made, or any request presented for further instructions. Nor is there, upon this appeal, any complaint made upon these points. It is, however, urged, first, that the indictment is void; and second, that errors were committed upon the trial in the reception of evidence, or in rulings in regard thereto.

First. The indictment. The questions presented were raised upon motion in arrest of judgment and formed no part of the proceedings of the trial. They are, therefore, not properly before us for review. (*People* v. *Gardiner*, 6 Park. 143; *People* v. *Allen*, 43 N. Y. 28–32.) For the office of a writ of error is only to bring up exceptions taken at the trial. (*People* v. *Allen*, 43 N. Y. 28–32; *People* v. *Casey*, 72 id. 393.) We

have, however, examined the indictment. It contains ten counts, and the learned counsel for the appellant insists that the first eight counts are void for duplicity. Assuming that to be so, yet as the ninth and tenth are not open to that objection, and the verdict was general " that the defendant was guilty of the crime charged in the indictment," it may be sustained upon those counts unless some other fault is found in them. (*People v. Davis,* 56 N. Y. 95.)

It is said " the ninth count instead of alleging that the intent was to 'kill,' alleges it was to commit murder." It is apparent that murder cannot be perpetrated without killing, but one may kill without committing murder; as manslaughter is a killing "without a design to effect death." (2 R. S. 661, § 6.) The words in the statute, under which the indictment is framed, exclude the idea of manslaughter, for they describe an "assault and battery by means of a deadly weapon, or by such other means or force as was likely to produce death with the intent to kill." This is murder, and the terms used are, I think, synonymous. Here, at least, a single offense only is charged, and it is well set out. Nor is the tenth count open to any just exception. The offense therein charged is within the same statute. (2 R. S., § 36, art. 2, chap. 1, pt. 4, tit. 2.) And although described with greater detail reaches the same end, and neither of these counts are open to the objection which was considered in *Dawson* v. *The People* (25 N. Y. 399), the case relied on by the appellant's counsel. They each contain the substance of the offense, with the circumstances necessary to render it intelligible, and inform the defendant of the allegations against him. This is sufficient. (*People v. Phelps,* 5 Wend. 9; *People* v. *Warner,* id. 272; *Tuttle* v. *People,* 36 N. Y. 436.)

Second. The exceptions taken on the trial. The district attorney called as a witness the defendant's brother, who being sworn, produced certain notes and a book of accounts belonging to the defendant, and proved that they came lawfully into his possession at the prisoner's house, and in his presence, shortly after the time stated in the indictment and the arrest.

He then offered the notes and book of accounts in evidence, and no objection being made, they were received and read. The notes were as follows: One dated October 22, 1877, for $369.23, signed Anson Pontius, payable April 1, 1878, to the order of John G. Hoster (the complainant), and indorsed by him, and also by Andrew W. Pontius (the prisoner). The other two purported to be signed by the complainant — were dated December 19, 1878, payable to the order of Andrew W. Pontius; one was for $2,500, and to become due March 25, 1879; the other for $1,000, to mature October 1, 1879; also the prisoner's book of accounts or ledger. The district attorney then called the complainant and other witnesses, who gave testimony tending to show that the notes of December 19 were neither of them made by Hoster, but were forgeries. Entries from the book of accounts were also read to the jury for the same purpose. After the case for the prosecution was closed, the learned counsel for the prisoner "moved that the court direct the jury to disregard all the evidence tending to establish the forgery of the two notes of $2,500 and $1,000, respectively, and said as a part of the motion in behalf of the defendant, and for him, and in his name, that he admitted, and that it be so entered in the minutes of the trial, that if the jury should find as a fact that the defendant committed an assault and battery, it is, therefore, conclusively established against him that he intended to kill John G. Hoster. That there is no charge of forgery in this indictment, but simply an assault and battery with intent to kill." The court denied the motion, and the exception then taken is pressed with great earnestness upon our attention. The argument in its support rests upon the ground stated at the trial. The exception is, however, unavailing. The notes and book were offered and received in evidence without objection from the defendant's counsel. The evidence of the complainant to the effect that the notes were forgeries, that he neither made, nor authorized them to be made, had been given without objection, and the witness had been cross-examined in regard thereto by the learned counsel for the defendant at considerable

length, and many matters were gone into by him, quite proper for the purpose of affecting the evidence given in regard to the notes, on direct examination, but wholly irrelevant for any other purpose. After such acquiescence and improvement of the opportunity afforded by it, it is too late to ask that the objectionable matter be stricken out. If any objection to it could fairly be made, it was as apparent when the evidence was offered as after it was in, and by not objecting to it when offered, the defendant took the risk of having the court, in its discretion, refuse to exclude it. For it is well settled that if a party does not object to evidence offered, it is discretionary with the trial court, after it is in, to grant or deny a motion to exclude it. In *Marks* v. *King*, decided by this court in February, 1876 (64 N. Y. 628), it was held that evidence admitted upon a trial by jury, either without an exception, or properly under objection, which for any reason should not be considered by the jury, is not necessarily to be stricken out on motion, but may be retained in the discretion of the court. And it was also held that the remedy of the party is to ask for instructions to the jury to disregard it. This decision was followed in *Platner* v. *Platner* (78 N. Y. 90), and the question now before us is directly within both cases. The attention of the trial court was not again called to the subject, nor was any request made for instructions in regard to it. It should not be thought, however, that but for this the exception would avail; on the contrary, a careful examination of the record leads to the conclusion that the evidence was properly received, and that the court did not err in retaining it. It was competent evidence for the purpose of showing the existence of a motive for the commission of the offense charged, and was none the less so because it also proved the commission of another crime. (*Pierson* v. *People*, 79 N. Y. 424.)

It is said, however, on behalf of the appellant, that errors were committed by the trial court, in the reception of various items of evidence, upon the question of forgery.

First. The complainant was "permitted to state business relations he had with the defendant." But no objection was made

to this, although the witness had proceeded at great length, in stating many transactions which had occurred between them. He testified to the sale of a horse, the receipt of defendant's note of $100 for it, that the first year the interest ($7) was paid in money. "I think he says I got $7 within a couple of years afterward, that makes two years' interest; then I indorsed $7 in 1874, *there was a man with a paper begging for him ; said his house was burned.*" Objected to, overruled, and exception. It is supposed that the part I have emphasized was objected to, and clearly it was neither relevant nor material, but the words had been spoken. If the learned counsel who objected had made a proper application to the court in regard thereto, the court would either have complied therewith, or the defendant had a valid exception. As it is, the exception is unavailing. It is obvious, however, that the witness was referring to the event only for the purpose of fixing time, for his next words are "I indorsed $7 on that note; I think that was in 1874," and doubtless this was so understood at the time, or some application of the kind above suggested, would have been made.

Second. The assault charged in the indictment was committed on Monday. On Saturday next before that day, a transaction was had between the witness Strong, and the defendant, in the course of which he gave the defendant a note indorsed by Hoster. He says, "I gave Pontius" (the defendant) "the note, and he stepped up to the light in the barn, and said something; I stepped up and asked him if there was any thing wrong in the note, he said no, only *it was a queer way for Hoster to sign his name ; he said the signature was made without taking the pen from the paper.*" The witness continued to testify at some length upon other subjects, and at the close of the direct examination the defendant's counsel moved to strike out the above words placed in italics. The court declined. The testimony was not irrelevant to the matter which, as we have seen, was in issue before the jury. Had Pontius committed the assault was the primary question ; had he a motive for doing it, and so producing the death of Hoster, was incidentally before them. The jury might find some aid in framing a

proper answer to this incidental but important question, if they found the notes above referred to were forgeries, that they were in possession of the defendant; and whether he was the perpetrator of the forgeries, or knew of them, and intended to profit by them, might appear from circumstances, and among others, any fact which disclosed that he had made himself acquainted with Hoster's signature so intimately that a slight peculiarity in it attracted his attention. The fact proven was not in itself strong; the jury might regard it as of no importance, but it was not irrelevant to that inquiry.

Third. It was not improper to permit the jury to examine the entries in the account book and the notes. They were already in evidence. The account book contained the handwriting of the defendant, while upon the notes was also, as was claimed, his handwriting, simulating the handwriting of Hoster. The practice which permitted the jury to compare the words and letters of these various writings was not a violation of the rule approved by this court in *Van Wyck* v. *McIntosh* (14 N. Y. 442), that whenever different instruments are properly in evidence for other purposes, the handwriting of such instruments may be compared by the jury, or the genuineness or simulation of the handwriting in question be inferred from such comparison. It does not appear that the learned trial court went further in this case. The index as well as the ledger was in evidence. It may be inferred that the index was part of the ledger; at any rate it appears from the record, not only " that the notes and book were received in evidence, and read to the jury, but that the district attorney read from the book, the index, Hoster's name, and page 108 in the book." To what extent, and how persistently the counsel for the people should be permitted to press these matters upon the jury, was a matter of discretion to be exercised by the trial judge. It does not appear to have been abused, or that more was done than the importance of the case required, or that the learned district attorney or his associate exceeded the line of duty.

Fourth. The defendant was examined at length in his own behalf, asserted the genuineness of the notes in question, and

stated that they were made in part payment of the sum of upwards of $4,000 theretofore, as he said, "loaned," by him, "to the complainant." It was relevant to inquire upon cross-examination as to this money, where it was procured by him, at what place kept, from whence taken to make the loan; and it was also relevant and pertinent to give in evidence any fact which would tend to show the improbability of his narrative. His conduct in regard to necessary expenses, his pecuniary necessities, the borrowing of money by himself at or about the time when he claimed to have advanced the complainant money, would all bear upon the question. So would the fact that small debts were contracted by him and not paid when due, or after frequent request, indicate something in regard to his pecuniary ability, and might well be submitted to the consideration of the jury, with other circumstances. A man may indeed be willing to lend to his neighbor in time of need, and yet be unwilling to pay his debts in due season, although fully able to do both, but whether in any given case either one or both of these facts existed would have to be determined from a variety of circumstances, and their force could properly be estimated by the jury. The inquiry, therefore, in regard to the undertaker's bill, and other debts contracted by the defendant, and not paid, and his omission to pay them after frequent request, was properly allowed. It was all part of a legitimate cross-examination to which the defendant offered himself, and in a measure demanded, when as a witness he testified to the fact of a large loan of money. The case, therefore, is not within the criticism made by the late chief judge of this court in *People* v. *Crapo* (76 N. Y. 288), for the evidence which the questions objected to was likely to elicit had a direct bearing upon the issue which was presented by the statement upon his direct examination. It was clearly competent upon cross-examination to show a course of conduct on his part, and a condition of his affairs inconsistent with the fact to which he had testified, both for the purpose of discrediting his testimony, and as tending to disprove the truth of his statements. Our attention has also been directed to other exceptions taken upon the

trial. They have been examined with the care due to a case of this importance, and a proper regard to the necessity of preserving the orderly conduct of a trial. We find no exception other than those above considered, which calls for special remark, and we find no error in the rulings of the learned trial court.

The conviction and the judgment of the General Term should be affirmed, and the case remanded to the Court of Sessions of Seneca county for sentence.

All concur.

Judgment accordingly.