WYNN *v.* CENTRAL PARK, N. & E. R. R. Co. 3 ⸚ Ṣ Ṛᵢₚᵥ 18 1

(*Common Pleas of New York City and County, General Term.* April 20, 1891.)

1. MOTION TO STRIKE OUT EVIDENCE.

In an action by a married woman for personal injuries from a collision between defendant's street-cars, in one of which she was a passenger, after she had testified that a miscarriage resulted from her injuries, and had been cross-examined thereon, and after her physician had answered questions, one of them asked by defendant's counsel, concerning such miscarriage, defendant objected that it was special damage, not pleaded, and moved to rule out and take from the consideration of the jury the testimony on the subject. *Held,* that the motion was too late, and it was not error to deny it, defendant not claiming to have been surprised.

2. INJURIES TO PASSENGER—EVIDENCE.

Another woman, a witness for plaintiff, testified that she was a passenger in the same car, sitting next to plaintiff, and was thrown off the seat by the collision, and some person fell on her, and she was bruised. *Held,* that she could not be asked, on cross-examination, whether she was not bruised on the side next to plaintiff, as bearing on the nature and extent of plaintiff's injuries; there being no proof that plaintiff was the person who fell on her.

3. SAME.

Plaintiff and her physician also testified that she sustained a rupture of the *umbilicus.* *Held,* that it was not error to exclude a question to a physician, a witness for defendant, whether hernia of the *umbilicus* is as serious as hernia of the *scrotum,* no evidence having been given as to hernia other than umbilical hernia.

4. SAME—EXCESSIVE DAMAGES.

Plaintiff in an action for personal injuries from a collision between street-cars was a woman about 40 years of age, the wife of the proprietor of a liquor store, and had had five or six children. There was evidence that, besides bruises and shock,

the immediate effects of the accident, a rupture of the *umbilicus*, likely to be a permanent injury, and a miscarriage, had been caused thereby. *Held*, that a verdict for $5,000 damages was not excessive.

5. SAME—DEFECTIVE APPLIANCES—PROOF OF DUE CARE.

A collision between defendant's horse-cars, by which plaintiff, a passenger, was injured, was caused by the brake of a car failing to work because of the breaking of one of the links of the chain which operated it. The inspector of the running gear of defendant's road testified that he had examined the chain that morning, and found it all right to the eye and touch; but his testimony as to the method of his inspection was inconsistent with his testimony on a former trial. No latent defect in the link which broke was shown, nor other cause for its breaking. *Held*, that the burden was on defendant to prove that the defect in the chain, if any, could not have been discovered by the use of the care and skill required of a carrier; and it was for the jury to say what inspection was made, and whether it was sufficient.

6. SAME—CARE OF DRIVER OF HORSE-CAR.

The inspector further testified that a proper application of the brake would not break the chain; that if the brake was properly applied, and the chain gave way, it was defective. It appeared that the driver had been compelled to apply the brake three times in quick succession by a wagon repeatedly getting on the track in front of the car. He testified that he was not conscious of using any extraordinary force. *Held*, that it was for the jury to say whether the brake was properly handled by him.

7. SAME.

Defendant requested an instruction to the jury that if they believed that the brake appliances were the best the road could provide for the purpose, and the same as used on other horse-car roads, and that an accident of this kind had never happened before, they could not impute negligence to the defendant by reason of the accident. *Held*, that this was properly refused, as excluding the duty of inspection.

8. TRIAL—INSTRUCTIONS.

An exception to the submission of a question to the jury is not available on appeal where the appellant, after such submission and before taking exception thereto, has requested specific instructions to the jury on the same point, which were given.

Appeal from trial term.

Action by Catharine Wynn against the Central Park, North & East River Railroad Company. Defendant appeals from a judgment for plaintiff, entered on the verdict of a jury, and from an order denying a motion for a new trial.

Argued before DALY, C. J., and BISCHOFF, Jr., and PRYOR, JJ.

*Vanderpoel, Cuming & Gordon,* (*Henry Thompson,* of counsel,) for appellant. *Charles H. Woodbury,* for respondent.

DALY, C. J. This is an appeal from a judgment entered upon a verdict for $5,000 in favor of plaintiff, who claims to have been injured by the negligence of the defendant company while a passenger in one of its horse-cars on Fifty-Ninth street, going east. The chain by which the brake was applied to the wheels of the car broke near Seventh avenue, and the car ran by its own weight on the down grade to Fifth avenue, where it came in collision with another car of the same line, which was standing at that point. The force of the collision was very great, as the car in which plaintiff sat was crowded with passengers, some of them standing up. One of the horses was killed, the glass of the car was broken, the front dash-board was smashed, passengers were thrown down, and the plaintiff was so injured as to be insensible, and to be unable to be moved for several days, was confined to her bed, sustained a rupture of the *umbilicus*, and had a miscarriage. It is claimed that the trial court erred in allowing evidence of the miscarriage, that being special damage, and not pleaded; but it appears that this injury was fully proved by the plaintiff without objection, and she had been cross-examined about it, and it was only after her physician had answered some questions concerning it—one put by defendant's counsel—that the formal objection was taken, and a motion was made to rule out the testimony, and to take away from the jury all considerations of the other testimony on the same subject. The motion was too late, and it was not error to deny it. *In re Mor-*

*gan*, 104 N. Y. 74, 9 N. E. Rep. 861; *Pontius* v. *People*, 82 N. Y. 339. The defendant did not claim to be surprised, and had all the advantage of the testimony of the plaintiff's family physician as to the fact of a previous miscarriage, which the plaintiff had denied. In fact it appeared from the first question on her cross-examination that defendant was apprised of the claim of miscarriage, and was prepared for it. On the question of damages it is also claimed there was error in the exclusion of testimony on the cross-examination of the witness Bridget McEwen. Mrs. McEwen was a passenger on the car, sitting next to the plaintiff, and was knocked off the seat by the collision, and somebody fell on her. She could not say who. She was asked whether she was not bruised on the side next to the plaintiff, and exception is taken to the refusal to allow that question. The appellant claims that it is the natural inference that the injuries the two women received were but skin contusions, caused by striking one against the other, and that that evidence was pertinent as to the nature and extent of the plaintiff's injuries. The evidence did not justify any such inference. Mrs. McEwen's injuries were received from some person falling upon her, but after she was knocked off the seat, and there is no proof that the plaintiff was that person. Error is also alleged in the refusal of the court to permit the defendant's witness Dr. Grinnell to be asked whether hernia of the *umbilicus* is as serious as hernia of the *scrotum*. The evidence as to hernia had been confined all through the case to umbilical rupture, and no other. The excuse offered by the defendant for asking this question is that the plaintiff's physician, Dr. Thomas, "craftily and purposely blends and confuses these radically different disorders in his testimony," where he says: "In all business affairs, where a person has a hernia it is a disability. Jurors are frequently excused from the suffering from one. No fireman, no policeman, is received in the service, nor in the military. It is a disability, and so recognized." The question put to Dr. Grinnell defendant claims would secure the jury from the error of supposing that any kind of hernia produces disability. It appears, however, that this evidence was not given until after the questions put to Dr. Grinnell had been excluded, so that they could not at that stage of the case have been intended to secure the jury from any confusion arising out of Dr. Thomas' craftiness. Besides, there is no reason to suppose from Dr. Thomas' testimony that he was then speaking of rupture of the *scrotum*. Finally, on the question of damages, the verdict is claimed to be grossly excessive, "considering the plaintiff's age and condition of life, the nature of the shock, the slight speed of the car, the plaintiff's sitting position at the moment of the impact." The plaintiff is about forty years of age, and has had five or six children. She is the wife of a man who keeps a liquor store at Eighty-Fourth street and Park avenue. Her injury is said to be permanent. Dr. Thomas says that the rupture has enlarged in spite of all efforts to prevent it: that it is likely to continue as long as she lives. She has worn a truss ever since the hernia appeared. This permanent injury, with the miscarriage and the immediate effects of the accident, justify substantial damages; and, if the jury say that $5,000 was not too much, we cannot say that they erred.

The principal question in the case is as to the alleged negligence of the defendant. The appellant claims that the mere fact that the brake became unmanageable is not enough to convict the defendant of negligence; that it was shown to be in good order up to the time it gave way, and had been daily inspected; also that there was nothing in the management of the car by the driver which would sustain a finding of negligence, and that it was error to submit the question of negligence in the appliances used to operate the brake and in the management of the car by the driver to the jury. There is no difference in the duty owing by the carriers of passengers by horse railroads and by steam. Passenger carriers bind themselves to carry safely those whom they take into their coaches, as far as human care and foresight will go, that

is, to the utmost care and diligence of very cautious persons.  *Maverick* v. *Railroad Co.*, 36 N. Y. 378, citing *Bowen* v. *Railroad Co.*, 18 N. Y. 408, and *Deyo* v. *Railroad Co.*, 34 N. Y. 9.   The carrier is bound to provide a safe and secure carriage for the transportation of passengers, and nothing can exempt him from this responsibility but the existence of some latent defect which no reasonable degree of human skill and foresight could guard against, and this obligation belongs to every species of appliance belonging to the carrier and used by him in the business in which he is engaged, and consequently, whenever it appears that the accident occurred through some defect in the vehicle or other apparatus used by the carrier, a strong presumption of negligence arises, founded upon the improbability of the existence of any defect which extreme vigilance, aided by science and skill, could not have detected. Where an injury is received from a derangement of anything employed by the carrier, the presumption necessarily arises that there exists somewhere an imperfection in the machinery employed, or negligence in its operation.   It is for the defendant then to show the facts relieving him from responsibility in the particular case; it is not for the plaintiff to ascertain the particular defect.   *Curtis* v. *Railroad Co.*, 18 N. Y. 534.   Where a situation is shown which could not have been produced except by the operation of abnormal causes, the *onus* then rests upon the defendant to prove that the injury was caused without his fault.   *Seybolt* v. *Railroad Co.*, 95 N. Y. 562.   The question for the jury is whether the presumption of negligence has been sufficiently negatived by the evidence introduced by the defendant.   The burden of explaining the cause of the accident rests upon the defendant.   Id.   Where the presumption of negligence has been established against a carrier of passengers in an action for damages resulting from an accident, it can only be rebutted by proving that the accident resulted from circumstances against which human prudence and foresight could not guard, and that it could not be averted by such precautions as would be dictated by the utmost care and prudence of a very cautious person before the accident, and without knowledge that it was about to occur.   *Bowen* v. *Railroad Co.*, 18 N. Y. 408.   In this case the brake failed to work because one of the links of the chain operating it broke on the trip on which the accident occurred.   The inspector of the running gear of the defendant's road testified that he had examined the chain that morning, and found it all right to the eye and touch; but in detailing the method of his inspection he told a different story at different times.   Upon this trial he said that he got underneath the car, and looked at every link. Upon a former trial he testified that he did not examine every link, and only tried the brake in the ordinary manner to see if it worked; not to see if everything was perfect, or to ascertain the strength of the chain, but only to see if it worked.   It was for the jury to say what inspection he did make, and whether what he did was a sufficient compliance with the requirement of vigilance which the law imposes upon the company.   The broken link was not produced to show that it had a latent defect.   No cause was shown for the breaking of the link, and the burden was on the defendant to prove that the defect in the chain, if any existed, could not be discovered by the use of the care and skill which the law required to be exercised.   There is an exception by the defendant to the submission to the jury of the question whether the device for applying the brake was that best adapted for the purpose, it being claimed that there was no evidence in the case that any other device was known or used.   It appears, however, that after the court had submitted that question to the jury the defendant requested certain specific instructions to be given to them on the point, which were given.   Having asked for the submission of certain propositions upon that branch of the case to the jury, and its request having been granted, its subsequent exception to the submission of the question is not available.   The court charged at its request: "Where an appliance, machine, or structure not obviously dangerous has been in daily

use, and has uniformly proved adequate, safe, and convenient, its use may be continued without the imputation of culpable imprudence or carelessness." Also "that, experience in carrying passengers in horse-railroad cars for many years having proved the safety of the device for applying brakes and the efficiency of the method of constructing and operating them, the defendant was justified in relying upon the safety of the device." These instructions gave the defendant all it contended for. It requested the court to charge, in addition, that "if the jury believe that the brake appliances used on this car were the best the road could provide for the purpose, that they were the same appliances used on other horse-car roads, and that an accident of this kind had never happened before, they cannot impute negligence to the defendant by reason of the use of this appliance;" but before the court could pass upon this request the defendant's counsel changed the latter part of it, and asked it to be charged in these words: "They cannot impute negligence to the defendant by reason of this accident,"—which the court refused to charge, because it excluded the duty of inspection. This was proper, and the exception to such refusal is not good.

As to the submission of the question of the alleged negligence of the driver of the car. The evidence of the defendant's inspector was that a proper application of the brake would not break the chain; also that, if the brake was properly applied, and the chain gave way, it was defective. It was for the jury to say whether the brake was properly handled by the driver. It appears that he was going down the grade from Seventh to Sixth avenue, when a beer wagon crossed in front of him on the track, compelling him to put on the brake; that the wagon then got out of his way, and he let the brake go, but the wagon pulled in before him again, and he was compelled again to apply the brake; that the wagon again got out of his way, but immediately pulled in before him a third time, and for a third time he had to apply the brake. It was then that the chain broke. He swears he is not conscious of using any extraordinary force. The jury might have regarded the natural effect upon him of this perverse and irritating conduct of the driver of the beer wagon in estimating both the amount of vigor he displayed in applying the brake, and the probability of his recollecting clearly how much force he employed. The case as left by the defendant showed that if the brake were properly applied the chain would hold; that if it did not hold when properly applied it was defective, but it was not shown what caused the chain to break, or that the breaking could not have been prevented. The presumption of negligence arose from the nature of the accident. That presumption remained in the case, and it was for the jury to consider the testimony given by the defendant, and to say whether the presumption of negligence was rebutted. There was ground for their finding that it was not, and we ought not to disturb the verdict. The judgment and order appealed from should be affirmed, with costs. All concur.