THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* MATTHEW F. DAILEY, Appellant.

*Assault — an arrest made by a policeman without cause — evidence as to the motive of the arrest — a policeman as an aggressor in a breach of the peace.*

On the trial of an indictment for assault in the third degree, alleged to have been committed by the defendant, who was a policeman, in arresting the complainant without cause and charging her with being disorderly, the question of the motive with which the arrest was made, whether in the performance of a public duty or not, was presented. It was claimed by the People that the defendant arrested the claimant from a sinister motive, in order to put an end to her importunities that he should provide for her daughter, whom she charged him with having seduced. The daughter was permitted to testify, as a witness for the People, that she was with child and that the defendant was its father.

The defendant was found guilty of the assault.

*Held,* that the testimony was properly admitted, as bearing upon the question of the defendant's motive in making the arrest.

A policeman who is engaged in committing a breach of the peace has no right to arrest the person against whom the breach is being committed, because of his resistance.

APPEAL by the defendant, Matthew F. Dailey, from a judgment of the Court of Oyer and Terminer held in and for the city and county of New York, rendered on the 5th day of December, 1892,

upon the verdict of a jury, convicting the defendant of assault in the third degree.

*W. F. Howe*, for the appellant.

*H. B. B. Stapler*, for the respondent.

VAN BRUNT, P. J.:

The defendant was indicted for assault in the third degree, committed upon one Annie Hannan on the 23d of April, 1892. The defendant pleaded not guilty, but upon the trial was found guilty of the crime charged in the indictment, and from the judgment thereupon entered this appeal is taken.

There seems to be some discrepancy, both in the case and upon the points of counsel, as to the date upon which the alleged assault was committed. The indictment charges that it was committed on the twenty-third of April, and the appellant's counsel assumes that it was the twenty-third of April, but the case would seem to indicate that it was the twenty-third of May. No point has been raised, however, as to these dates; it is probable that some mistake has been made in the printing of the papers.

The complainant, after testifying to various interviews with the defendant leading up to the interview which resulted in her arrest, testified that on the evening of the twenty-third of May she saw the defendant at 318 Monroe street. She continues: " He sent a little boy up to me to tell me there was an officer down stairs wanted to see me. I went down stairs; his wife was with him. I stood on the top step of my door and he got hold of my right arm with his left hand and put his club to my nose and called me a whore, and said, 'Do you mean to say that I have kept company with your daughter a year?' I said, 'No, not a year, but you are the ruination of her.' He said, 'You damned whore, if you say that again I will arrest you.' I said, 'It is I that ought to be arresting you.' I stepped down off the door and went about a yard or so away from the door. He took up his club to club me. His wife went over and got hold of the club. He told his wife to let go of that stick. My oldest son went up and said, 'Don't you club my mother.' He said, 'Yes I will,' and he called my son a name. He said, 'I will

FIRST DEPARTMENT, NOVEMBER TERM, 1893.          [Vol. 73.

take you in.' I said, ' Take me in, you wretch ; you are not satisfied to ruin my daughter, you want to arrest me now.' He arrested me. I sent up stairs for my clothes. All the children were shrieking until we got to the station house."

She then testified that she was locked up at the station house charged by the defendant with being disorderly and drunk, but on the next day was discharged. It was claimed upon the part of the People that this course was resorted to by the defendant in order to put an end to the efforts which the complainant was making against him because of his conduct towards her daughter.

Several witnesses were called upon the part of the People in corroboration, including the daughter of the complainant, who, among other things, was asked : " Q. You are about to have a child, are you not ?   A. Yes, sir.   Q. Is Mr. Dailey (meaning the defendant) the father of that child ?   A. Yes, sir."

This testimony was objected to and an exception taken.

The defendant was examined upon his own behalf, and testified as to the interview which resulted in the arrest of the complainant as follows :   " She came down and she says, ' Good evening.'   I said, ' Good night.'   She said, ' Are you Roundsman Dailey ?'   I said, ' Yes, mam.'   She said, ' Won't you step up stairs, I want to talk with you ?'   I said, ' If you want to talk with me you can talk with me down here.'   She says, ' You have my daughter in the family way, and the quietest way out of this is the best, and I want you to make some kind of a settlement, as I have no house or money to keep my daughter, and I want to make an arrangement to send her to the hospital.'   I said, ' I don't know you and I don't know your daughter.'   She said, ' You are Roundsman Dailey ?'   I said, ' Yes, but I don't know you or your daughter,' and she said, ' You stinking son-of-a-bitch,' and with that she grabbed me by my coat and she pulled two buttons off my dress coat, and she says, ' I will show you whether you know me or my daughter or not.'   With that I sent a rap out on the sidewalk for assistance, and nobody answered, and she came over and caught hold of my collar and pulled the side of my collar off.   I then sent out another rap, and nobody came, and then I said, ' I will take you to the station house,' and she said, ' No, you son-of-a-bitch, I will take you to the station house ; you are my prisoner.'   And she grabbed hold of my

arm and pulled me to the sidewalk and she started to run up, and then she caught hold of her son's arm and she said, 'I wouldn't walk on the same side of the street with you,' and she went along until we reached Delancey street, and then she walked along about ten feet with me, and then went up to her son again and caught hold of her son's arm, and walked from there to the station house."

And certain other evidence was offered for the purpose of corroborating the testimony of the defendant.

It is now urged that it was error to admit the testimony of the daughter which has been excepted to ; that " the issue before the jury was not whether the defendant was or was not guilty of the charge made against him by the complainant in reference to her daughter, nor was the jury to determine whether the defendant alone was the father of the child of which Mamie Hannan was then pregnant."

In answer to this objection it is urged upon the part of the People that this testimony was competent in order to prove the motives which caused the defendant to act in the manner in which he was claimed to have acted by the complainant, and the making of the arrest without cause ; and that this was in the mind of the court in admitting the testimony was clear because throughout the charge the question of motive is continually kept before the mind of the jury ; that if the arrest was made in the performance of a public duty, the jury were instructed that the defendant was not guilty ; but if made because of a sinister motive and not for the purpose of the preservation of the public peace then the defendant was guilty.

It would seem upon an examination of the rule in this State, as developed by one or two cases to which reference may be had, that no error was committed in the introduction of this testimony.

In the case of *Pierson* v. *The People* (79 N. Y. 424), the appellant had been convicted of murder in the first degree in causing the death by poison of one Withey in February, 1887. Upon the trial, after evidence had been given upon the part of the People showing an intimacy between Mrs. Withey and the prisoner, who was a married man, before and after the death of Withey, and that the prisoner departed from his home on the 19th of February, 1877, eleven days after the death of Withey, the prosecution called one

Butterfield, a clergyman who resided in Michigan. He testified that the prisoner called at his residence with Mrs. Withey on the 26th of February, 1877. The witness was then asked what took place at that time. This was objected to, and the objection overruled. The witness answered, in substance, that he married them; that the prisoner had stated under oath that there was no legal objection to his marriage. The court held that the evidence was competent. " Crime is never committed without a motive; and hence, on the trial of a person charged with crime, it is always competent to give evidence showing the motive which induced the criminal to act. Where the crime is clearly proved, and the criminal positively identified, it is not important to prove motives. But where the case depends upon circumstantial evidence, and the circumstances point to any particular person as the criminal, the case against him is much fortified by proof that he had a motive to commit the crime. Where the motive appears, the probabilities created by the other evidence are much strengthened. This evidence tended to prove that the motive which operated upon the prisoner was the desire to possess Withey's wife; that his passion for her was so absorbing that he was determined to overcome all obstacles standing in his way. One obstacle was the husband, and he was murdered. Marriage was either necessary or desired; and when he was confronted with the necessity of taking the oath, which he could not truly take, he overcame that obstacle by falsely taking it. Thus, to accomplish his end, he commits two crimes; and the last has an intimate relation to the first. By the last he consummates a purpose in part achieved by the first; and the fact that he would take this false oath and enter into this marriage shows the overpowering nature of the motive which impelled him. That such proof is competent, even if it tends to prove another crime, has frequently been decided. (*The People* v. *Wood*, 3 Park. Cr. 681; *Stout* v. *The People*, 4 id. 71.)"

So, in the case of *Pontius* v. *People* (82 N. Y. 339), the appellant was indicted for assault and battery with intent to kill, and convicted of the offense. Upon trial of the indictment the prosecution gave in evidence certain notes purporting to have been made or indorsed by the complainant, and also a bank account. Testimony was then given by the complainant and others, showing that the

signatures of the complainant to the notes were forged. After the case for the prosecution was closed, the prisoner's counsel moved that the court direct the jury to disregard all the evidence tending to establish the forgery, and the court denied the motion. Upon appeal it was held that the evidence was properly received, and the court did not err in retaining it; that it was competent as showing the existence of a motive for the commission of the offense charged, and none the less so because it also proved the commission of another crime.

Now, in the case at bar, the question of motive was one which was most prominently before the jury, but the evidence objected to was not of the serious character which was considered in the cases above cited. It did not prove that the defendant had been guilty of a crime. The evidence as to his intercourse with this girl, if it commended itself to the jury, tended strongly to support the claim of the motive advanced by the People. It does not seem to have have been error, therefore, to admit this testimony.

Various criticisms have been made in respect to the charge of the learned court, but there are none which seem to require any particular notice.

It is urged that "the learned judge instructed the jury that if Dailey had seduced Mrs. Hannan's daughter and went to Mrs. Hannan for the purpose of inducing silence, and that Mrs. Hannan had then been guilty of acts of disorderly conduct in the public streets, for which Dailey arrested her, that arrest would be unjustifiable, solely because Dailey's motive in going to the place was not a pure one."

But an examination of the charges does not seem to sustain this criticism. The charge is that if defendant's story was incorrect, and "he came to this woman prompted either by what may have been told by his wife, or even by what may have been told by the two officers, Baker and Leonhard, and that he sought to silence her importunities in the manner which has been described by the witnesses, then, gentlemen, you are at liberty to find this defendant guilty."

If a police officer provokes a breach of the peace, and incites to a breach of the peace, it is difficult to see how he can justify an arrest, when he is the guilty party. If the evidence of the com-

plainant was true, if there was any disorderly conduct it was upon the part of the police officer, and not upon the part of the complainant. And all that the learned court intended to instruct the jury was that if Dailey was committing a breach of the peace, he had no right to arrest the complainant because of her resistance.

Upon the whole case we find no errors which call for a reversal. The judgment should be affirmed.

FOLLETT and PARKER, JJ., concurred.

Judgment affirmed.