JULIA TURNER, Respondent, v. THE CITY OF NEWBURGH, Appellant.

Municipal governments owe to the public the absolute duty of putting and maintaining the public highways, which are in their care or under their management, in a good, safe and secure condition; and any default in this respect, if occurring through negligence of the officials upon whom the duty is devolved, renders the municipality liable.

Where the unsafe condition is caused by some other than municipal agency or instrumentality. negligence is not imputable until a sufficient time has elapsed to charge the municipal officials with notice

The fact that the municipality has employed a contractor to do work involving excavation of one of its streets, does not absolve it from its duty and responsibility in relation to such street.

By the provisions of defendant's charter the members of its common council are made commissioners of highways, and are charged with the duty of keeping its streets in good order, and its superintendent of streets is required to superintend all work performed on the streets Plaintiff fell upon a sidewalk and was injured; the fall was caused by a loose stone in a cross-walk. In an action to recover damages for the injury it appeared that a contractor with the city had excavated, where the accident happened, in constructing a sewer. The work in that place had been completed and the stones of the cross-walk replaced, the work, however. had not then been accepted by the city. Plaintiff's evidence tended to show that the stone had been loose for a week or over. *Held.* that the question of defendant's negligence was properly submitted to the jury.

Also, *held,* that questions on the part of plaintiff to members of the aldermanic, sewer and street committee, as to the amount of attention given by those committees to the condition of the streets during the progress of the work, also were properly admitted; and that testimony of the street superintendent, offered on behalf of defendant, as to whose care the sewer was under during its construction, was properly excluded.

The receipt of evidence, under a general objection, is not ground for reversal, unless there be some grounds which could not have been obviated had they been specified, or unless the evidence in its essential nature is incompetent.

It is competent to ask the opinion of a medical expert, based upon an ascertained condition of suffering or bad health, as to whether that condition might have been caused by a previous injury and as to its permanence

*Strohm* v. *N. Y., L. E, & W. R. R. Co.* (96 N. Y 305). *Tozer* v. *N. Y C & H. R. R. R. Co.* (105 id. 617) distinguished.

The office of an objection is to stop an answer. The remedy, if an improper answer is given, is to move to strike out, or by request for instructions to the jury to disregard it.

(Argued March 23, 1888; decided April 10, 1888.)

Appeal from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 15, 1885, which affirmed a judgment in favor of plaintiff, entered upon a verdict and an order denying a motion for a new trial.

This action was brought to recover damages for injuries resulting from a fall on a cross-walk of one of the defendant's streets.

The material facts are stated in the opinion.

*James G. Graham* for appellant. To authorize evidence of consequences not the immediate result of the injury, they must be such as, in the ordinary course of nature, are reasonably certain to ensue; but consequences which are contingent, speculative, or merely possible, are not proper to be considered in estimating the damages, and may not be proved. (*Strohm* v. *N. Y. L. E. & W. R. R. Co.*, 96 N. Y. 305; *Tozer* v. *N. Y. C. R. R. Co.*, 105 id. 617; *Church* v. *Howard*, 79 N. Y. 421; *Dilleber* v. *Ins. Co.*, 69 id. 257; *Marvin* v. *Man. R. Co.*, 53 Supr. Ct. R. 529; *Griswold* v. *N. Y. C. & H. R. R. Co.*, 44 Hun, 226; *Mosher* v. *Russell*, id. 12; *Curtis* v. *R. R. Co.*, 18 N. Y. 542; *Brient* v. *Trimmer*, 47 id. 97, 98; *Duer* v. *Sixth Ave. R. R. Co.*, 26 id. 49.) The court erred in permitting plaintiff's witnesses, Drs. Ely and Montfort to repeat to the jury the statements made to them, respectively, by the plaintiff concerning her ailments. (*Roche* v. *Brooklyn City R. R. Co.*, 105 N. Y. 294; *R. R. Co.* v. *Huntly*, 38 Mich. 537, 541, 545; *Clever* v. *Hillbury*, 36 Alb. L. J. 79; *Hagenlocher* v. *C. I. & B. R. R. Co.*, 99 N. Y. 136; *Roche* v. *B. C. & W. R. Co.*, 105 id. 297; *Martin* v. *N. Y. N. H. & H. R. R. Co.*, 103 id. 626, 629; *Mosher* v. *Russel*, 44 Hun, 12; *People* v. *Messner*, 45 N. Y. 1; *Hutchkins* v. *Hutchkins*, 98 id. 56; *Waldele* v. *N. Y.*

*C. & H. R. R. R. Co.*, 95 id. 374, *Vicksburg & M. R. Co* v. *O'Brien*, 34 Alb. L. J. 495; *Erben* v. *Lorillard*, 19 N. Y. 299; 32 id. 34.) The court also erred in allowing Curtis Stanton, one of the sewer committee, to answer questions as to the attention given by his committee to the building of the sewer and the condition of the street during its progress. (*McDermott* v. *Third Ave. R. R. Co.*, 44 Hun, 109.) The judge erred in refusing to charge the jury that "the plaintiff, seeing and knowing the excavations had lately been made there, was bound to use greater care and caution than while walking on the ordinary sidewalk, or than she would have used in crossing before the sewer was built." (*Kunz* v. *Troy*, 104 N. Y. 350; *Barker* v. *Savage*, 45 id. 191; *Grippen* v. *R. R. Co.*, 40 id. 34; *Tolman* v. *S. B. & N. Y. R. R. Co.*, 98 id. 198, 202, 204; *Ernst* v. *H. R. R. Co.*, 24 How. 97; *Wilds* v. *H. R. R. Co.*, 24 N. Y. 430; *Lee* v. *Gas-Light Co.*, 98 id. 115; *McGrath* v. *Cent'l R. R. Co.*, 59 id. 470; *Bajus* v. *Syracuse, B. & N. Y. R. R. Co.*, 8 N. E. Rep. 532; *Dubois* v. *Kingston*, 102 N. Y. 219; *Bowen* v. *City of Rome*, 23 W. Dig. 406; *Cahill* v. *Hilton*, 106 N. Y. 512; *Cummins* v. *Syracuse*, 100 id. 638; *Lomer* v. *Meeker*, 25 id. 363; *Newton* v. *Pope*, 1 Cow. 110.) Defendant was not chargeable with negligence. (Wharton on Negligence, 747, § 961; 13 Vt. 424; 9 Pick. 166; *Hyaurs* v. *Webster*, L. R., 2 Q. B. 264; affirmed, 4 id. 138; *Ster* v. *Tuety*, 45 Hun, 53; *Woodard* v. *R. R. Co.*, 106 N. Y. 369.)

*M. H. Hirschberg* for respondent. The city was not absolved from responsibility for the subsequent condition of the streets because it had employed a contractor to build the sewer. (*Storrs* v. *City of Utica*, 17 N. Y. 104; *Chicago City* v. *Robbings*, 2 Black [U. S.], 418; *Robbins* v. *Chicago City*, 4 Wall. 657, 679; *Water Company* v. *Ware*, 16 id. 556; *City of St. Paul* v. *Seitz*, 3 Minn. 297; *City of Logansport* v. *Dick*, 70 Ind. 65; 36 Am. Rep. 166; Dillon on Municipal Corporations, §§ 791, 792, 793.) The plaintiff was properly permitted to prove her declarations of symptoms

to the three physicians who attended her professionally. (1 Greenl. Ev. § 102; *Matteson* v. *N. Y. C. R. R. Co.*, 35 N. Y. 487, 490, 491; *Meigs* v. *Buffalo*, N. Y. Sup. Ct. 855; *Reed* v. *N. Y. C. R. R. Co.*, 45 N. Y. 578; *Platner* v *Platner*, 78 id. 102; *Briant* v. *Trimmer*, 47 id. 96; *Daly* v. *Byrne*, 77 id. 187; *Ward* v. *Kilpatrick*, 85 id. 413, 414, 417; *Tiemeyer* v. *Turnquist*, 85 id. 516; *Tooley* v. *Bacon*, 70 id. 34; *Quimby* v. *Strauss*, 90 id. 664; *Bergmann* v. *Jones*, 94 id. 51; *Buel* v. *N. Y. C. R. R. Co.*, 31 id. 320.) Whether, in this particular instance, there was adequate care, in view of all the circumstances, was a matter of fact and not of law. (*Weed* v. *Ballston Spa*, 76 N. Y. 329; *Palmer* v. *Dearing*, 93 id. 7; *Bullock* v. *New York*, 99 id. 654.)

GRAY, J. The plaintiff alleged her injuries to have been occasioned by falling upon a street crossing in the city of Newburgh, during the evening of October 27, 1883. The evidence tended to prove that her fall was due to the presence of a loose stone in the cross-walk.

The first thing we shall consider is whether the case was properly submitted to the jury, and whether those exceptions which were taken to the rulings made by the trial judge, upon the defendant's requests to charge, and which have been pressed upon our consideration here by the appellant's counsel, present any errors calling for a reversal of this judgment.

We think the charge, to which no exception seems to have been taken, was as favorable to the defendant as it might hope, and stated very clearly and fairly the rules of law governing the duties and obligations of the municipality with respect to its highways. The jury were instructed that the plaintiff was bound to exercise ordinary care and caution in using the streets, and that while she had the right to assume that the street was reasonably safe, she was bound to establish her own freedom from fault, and if she knew or saw that there was any danger, she would not be justified in recklessly rushing into it, even if the city had been in fault, or the defect had been caused by the wrongful act of an independent contractor.

They were instructed as to the measure of the city's duty, to the effect that, while it was bound to maintain its highways safe for travelers, it was not a guarantor of their safety; that it was bound to exercise reasonable care in maintaining safe highways, and if they became unsafe without the defendant's fault, it was not responsible unless it had notice, or the defect had existed a sufficient length of time to apprise its officers, charged with that duty, if they were diligent in its performance. In giving these instructions the learned judge was correct. Certain rules of law applicable to such cases have been well settled and defined by the adjudged cases. Municipal governments owe to the public the specific, clear and legal duty of putting and maintaining the public highways which are in their care, or under their management, in a good, safe and secure condition, and any default in making them safe and secure, or in so maintaining them, if occurring through the negligence of the officials, upon whom a duty is devolved by law, will render the city liable. Where the unsafe condition occurs through some other agency or instrumentality, negligence is not imputable until a sufficient time has elapsed to charge the city officials with notice. Where a street is thrown open for the public use, those who travel upon it have the right to assume that it is in a reasonably safe condition, and if, without fault of their own, or without knowledge of some existing obstruction, they are injured while lawfully using the street, the city is liable, unless the defect which has caused the injury has existed for so short a time that the city officials, by the exercise of reasonable care and supervision, could not have known of it. The city is not an insurer of the safety of those who travel upon its highways, and those who do so are bound to use their faculties and are held to the exercise of ordinary care and prudence. The duty of the city to keep its streets in a safe condition for public travel is absolute, and it is bound to exercise reasonable diligence and care to accomplish that end. And, in cases like the present, where it has employed a con-

tractor to do work involving excavation of its streets, it is not absolved from its duty and responsibility. (Dillon on Municipal Corporations, §§ 791–793, 1066; *Storrs* v. *City of Utica*, 17 N. Y. 104; *Brusso* v. *City of Buffalo*, 90 id. 679; *Kunz* v. *City of Troy*, 104 id. 344, 349.)

By the provisions of the defendant's charter, the members of the common council are made the commissioners of highways, and upon them is imposed the duty of keeping the streets in good order. The superintendent of streets, under the directions of the mayor and street committee, must super-intend all work performed upon any of the public highways, streets, walks, bridges, sewers, etc., of the city.

There was evidence tending to prove that for a week or more before the occurrence complained of, the stone, over or upon which plaintiff fell, was loose and in bad condition. The contractor, who did the work upon the sewer had completed his work at that part of the street where the plaintiff fell, and the appellant's theory of the occurrence was, that recent rains had undermined the earth in the freshly covered trench, so as to leave the stone somewhat insecure in its place, but not to the knowledge of the contractor or of the city officials, and not, in fact, in any dangerous condition at all. The city cannot claim legal exemption from liability by reason of its having contracted out the construction of this sewer, and because it had not yet accepted the work of the contractor. The streets remained as much as ever in the care and under the supervision of its officials, and as the defendant's officers had permitted the street at that point to be open for public travel, the city was not discharged from liability for accidents occurring through some defective condition of the streets, by reason of its not having technically or formally accepted the work under the sewer contract; provided, as in all other like cases, the defect had existed a sufficient length of time to charge its officers with knowledge of the existence of the defect. What would be a sufficient length of time to charge the city officials with negligence is a question of fact for the jury to consider and decide, in view of all the circumstances disclosed by the

proofs; for in different cases what would be a sufficient length of time might vary in the judgment of men.

As there was evidence tending to prove negligence in suffering the cross-walk to remain so long in a bad condition, and none proving that the plaintiff was guilty of any act contributing to her accident, the question of liability or non-liability of the defendant for the occurrence was properly left to the jury to determine, and their verdict is conclusive upon us. The judge's charge was within the lines of the authorities, and his qualifications of the requests as to the city's obligation in respect of the crossing, after the completion of the contractor's work upon that part of the street, were proper. Nor did he commit error in declining to charge, as matter of law, that in view of the recent excavations the plaintiff was bound to use greater care and caution than while walking upon the ordinary sidewalk, or than she would have used before the sewer was built. The street was open for public travel, and it does not appear that plaintiff knew of any defect in the crossing, and, without such knowledge or notice, she had the right to assume it was safe and secure. A person using a public highway is not bound to anticipate danger, without some notice of a condition of things suggesting a peril of travel. It was for the jury to decide, as matter of fact, whether, under the proofs, the plaintiff conducted herself as a person ordinarily does under similar circumstances.

The appellant's counsel insists upon certain errors in the exclusion and in the admission of evidence. There was no error in allowing the questions to members of the aldermanic, sewer and street committees, as to the amount of attention which was given by those committees to the condition of the streets during the progress of the work on the sewer, or in excluding the testimony of the street superintendent, as to whose care the sewer was under during its construction. By the charter of the city, to which we have referred, the common council were charged with the duty of keeping the streets in order, and upon the street superintendent, under the direction of the mayor and the street committee, was imposed

the duty of superintending all work to be done upon the city streets, sewers, etc.

Exceptions were taken to the admission of the evidence of certain physicians. These objections, as were, indeed, all the other objections, were general and failed to specify any grounds. This court has held that where the objection to evidence is general and it is overruled, and the evidence is received, the ruling will not be held erroneous, unless there be some grounds which could not have been obviated had they been specified, or unless the evidence in its essential nature be incompetent. (*Bergmann* v. *Jones*, 94 N. Y. 51–58 ; *People* v. *Beach*, 87 id. 508, 512 : *Tiemeyer* v. *Turnquist*, 85 id. 516, 523.) An objection to a question which fails to assign any ground for the exclusion of the testimony called for, is not ground for a reversal of the judgment, unless the question is wholly improper or the testimony it calls for wholly inadmissible. The reason for the rule is, that if the ground had been stated the form of the question might have been changed, or the counsel might have conceded the incompetency of the evidence and have withdrawn the question. (*Ward* v. *Kilpatrick*, 85 N. Y. 413, 417 ; *People* v. *Beach, supra.*) But the questions addressed to the physicians calling for their opinions as to whether the physical condition in which they found the plaintiff to be, upon their examination of her, could have resulted from a fall, were not objectionable and infringed upon no rules of evidence. We see no objection to the expression of opinions by competent medical experts upon an ascertained physical condition of suffering or bad health, as to whether that condition might have been caused by or be the result of a previous injury.

It was for the jury to decide whether the injuries or sufferings, of which the plaintiff complained, were the direct result of the accident, and to that end it was proper to give evidence tending to show, in the opinion of witnesses competent to speak upon the point, that they were the results of the plaintiff's fall. In *Ehrgott* v. *Mayor, etc.* (96 N. Y. 264), the plaintiff was permitted to give, under objection, the evidence of

physicians as to what was the cause of his present condition and other evidence tending to show that his diseases were the results of the strain and shock caused by being dragged over a dash-board, as the result of an accident to his wagon, caused by a ditch in the street. The judge, in his charge, left it to the jury to determine whether the injuries which plaintiff complained of were the proximate, direct result of the accident, and charged them that whether his injuries resulted from the strain experienced in being pulled over the dash-board, or from the exposure after the accident, the defendant is still responsible for the injuries from which the plaintiff is now suffering. This was held not to be error. Judge Earl said: "A city may leave a street out of repair and no one can anticipate the possible accidents which may happen or the injuries which may be caused. * * * Even for weeks and months after the accident the most expert physicians could not tell the extent of the injuries." And that learned judge stated the rule as follows: "That a wrong-doer is responsible for the natural and proximate consequences of his misconduct, and what are such consequences must generally be left for the determination of the jury."

We think that, for the proper application of that rule, it is perfectly competent to furnish the jury with evidence of the present physical condition and bodily sufferings, and with the opinions of competent physicians as to whether such could have resulted from the accident, and as to their permanence.

The rule established by the cases of *Strohm* v. *N. Y., L. E. & W. R. Co.* (96 N. Y. 305), and of *Tozer* v. *N. Y. C. & H. R. R. R. Co.* (105 id. 617), referred to by counsel, simply precludes the giving of evidence of future consequences which are contingent, speculative and merely possible, as the basis of ascertaining damages. Those authorities in no wise conflict with the rule allowing evidence of physicians as to a plaintiff's present condition of bodily suffering or injuries, of their permanence and as to their cause. We conceive such to be the best mode and manner of furnishing information for the guidance of the jury in awarding damages. It is for the jury

to say, upon the evidence, whether they believed the plaintiff's then condition to be the direct and proximate result of her accident, for which the defendant should be made answerable in damages, if caused by its misconduct, and not contributed to by any default of plaintiff in the exercise of ordinary care and prudence.

The defendant insists it was error to exclude evidence as to whether plaintiff worked on her own account or not, in view of the fact that she had testified that during her married life she had taken in tailoring. But the judge's charge cured any possible error or misconception on that head, for he instructed the jury that the plaintiff's right of recovery was limited to the pain and suffering she had undergone, and explicitly withdrew from the jury any consideration of compensation for loss of ability to perform services or household work. As to the testimony of Dr. Ely, repeating statements made to him by the plaintiff, as to her physical symptoms when he examined her with reference to the injury she complained of, while we are not clear that if a question calling for them had been objected to, it would have been error to admit such testimony, yet, as the question was not objected to, if the answer was improper, its effect could only have been removed by a motion to strike out, or by request for instructions to the jury that they disregard it. The office of an objection is to stop an answer, but the remedy, if an improper answer is given, is as we have stated. (*Platner* v. *Platner*, 78 N. Y. 90–102; *Pontius* v. *People*, 82 N. Y. 339, 347.) As it was, the statements of plaintiff repeated by Dr. Ely, were incidental and complementary to his examination of her, and seem called for by that examination, with a view to its greater completeness and efficiency.

As no objection was interposed to any question calling for the witness' statement as to what plaintiff had stated to him, the propriety of other like testimony by the same or other witnesses, given without objection, cannot be considered now. The very elaborate brief and the very able argument of the learned counsel for the appellant have received most careful

attention and consideration, and we find ourselves unable to agree with them that the trial judge erred upon the trial of this case, or that the appellant was prejudiced by anything disclosed by this record.

The judgment should, therefore, be affirmed.

All concur.

Judgment affirmed.