HANNAH J. STEBBINS, Respondent, *v.* THE VILLAGE OF ONEIDA, Appellant.

*N. Y. Supreme Court, Fourth Department, General Term, May 12, 1889.*

1. *Municipal Corporation. Liability.*—The charter of the village of Oneida (chap. 335, Laws of 1869), confers a sufficient power upon the trustees, and it is their duty to keep the sidewalks in a reasonable condition, and for neglect of such duty, the village is liable to persons who, without fault, receive injuries upon its streets.

2. *Same.* *Questions of fact.*—The condition of the sidewalk where the accident occurred, actual and constructive notice to the corporation, its negligence and plaintiff's contributory negligence, and the exercise of reasonable diligence in discovering the unsafe condition of the sidewalk, are upon the evidence, questions of fact for the determination of the jury.

*Same.* *Prior accidents.*—Proof of similar prior accidents, at the same place and from a like cause, is competent to show notice or knowledge on the part of the corporation.

Action to recover damages for personal injuries sustained by plaintiff from falling upon one of defendant's sidewalks. The jury awarded her $200, and a motion was made for a new trial and denied. An appeal was taken from the judgment entered upon the verdict and from the order denying the new trial.

*E. F. Haskell*, for appellant.

*R. J. Fish*, for respondent.

HARDIN, P. J.—Appellant is a municipal corporation in virtue of chapter 335 of the Laws of 1869. Section 12 of the act provides for the items that " shall be included in the ordinary expenses of the village," and in the seventh subdivision are found these words :

" 7. For the necessary advances in making or repairing sidewalks, or abating nuisances, after such proceedings have been had, as to make such expenses a lien upon real property, upon the failure of the owner to comply with the directions of the trustees in respect thereto." Also subdivision 15 : " For the necessary expenses of doing any act expressly authorized by law.  *  *  * "

Section 27 provides as follows : " 27. It shall be the duty of the trustees, and they shall have the power  *  *  * "
Subdivision 14: " To direct the manner and superintend the making and repairing of sidewalks and crosswalks in said village." Subdivision 15 : " To exercise the duties of commissioners of highways of towns within the limits of

16

the village, so far as those powers and duties are consistent with other parts of this act, and are applicable to the village ; * * * " and in section 32 of the act we find the following words : " Section 32. The board of trustees shall have the power to cause any sidewalks in said village, which have not already been flagged or curbed, to be raised, leveled, graded, curbed and flagged, graveled or planked, in such manner and with such material as they may deem proper ; and to cause any sidewalks which have been flagged or curbed, or in any way made, to be relaid, amended or repaired whenever they may deem it necessary, etc.," and in section 33 a further provision is inserted, viz. : " And the said trustees shall, within the bounds of said village, have all the powers of commissioners of highways, of towns, and shall perform all such duties which, by law, are enjoined upon commissioners of highways, and be subject to like restrictions * * * " Section 45 provides as follows : " It shall be the duty of the street commissioners " * * * to keep in good condition the streets and highways within the boundaries of his district, subject to the direction of the trustees as herein provided * * * ." We think the provisions which we have quoted from the charter confer a sufficient power upon the trustees to keep the sidewalks in a reasonable condition, and that it is their duty to keep them in such condition. The same question was passed upon by this court in the case of Retta H. Round *v.* The Village of Oneida (47 Hun, 632), and the power and duty of the trustees affirmed.

In speaking of a charter quite similar to the one before us in Pomfrey *v.* Village of Saratoga Springs, the court of appeals said, " that under such a charter it was the duty of the defendant to keep its streets and sidewalks in a reasonably safe and proper condition for public use, and that for neglect of such duty it was liable for damages to persons, without fault on their part, receiving injuries upon

its streets, has been settled by many decisions in this state, and is no longer open to question." Pomprey v. Village of Saratoga Springs, 5 N. Y. State Rep. 802; s. c. 104 N. Y. 459; Russell v. Village of Canastota, 98 id. 49 ; Turner v. City of Newburg, 109 id. 301 ; 15 N. Y. State Rep. 93.

*Second.* Whether the sidewalk where the plaintiff received the injuries was out of repair, and the defendant had actual notice thereof, or it had remained out of repair sufficent time to give the defendant constructive notice thereof, and whether the plaintiff was free from contributory negligence or not upon the occasion of receiving the injuries, were questions of fact which were proper for the jury, and they were severally submitted, clearly and carefully, by the trial judge, "and there is nothing in the evidence which requires us to disturb their verdict upon those questions." Quinlan v. City of Utica, 11 Hun, 218.

We think the fact that the sidewalk in question was inspected by Upson, the chairman of the sidewalk committee, about the 1st of September, 1883, and considered by him in a satisfactory condition, does not of itself constitute a defense. It was evidence for the jury to consider, and in respect thereto the trial judge very properly instructed the jury that the trustees "were bound to use reasonable diligence in discovering whether this walk was out of repair, and it is a question of fact for the jury to say whether, if they did what they claim, they used due diligence or not. I cannot, as a matter of law, hold that they did use due diligence." We think the language of the charge was appropriate.

*Third.* When Doyle was describing the condition of the sidewalk in 1883, he stated that he was walking with his son-in-law, and tripped and fell. That testimony seems to have been received without objection. He was then asked to tell what occurred. A general objection was made to that, and it was overruled, and the witness answered that

his son-in-law, " stepped a little quicker than me, and stepped on the end of a plank, and it tipped up and caught my foot and pitched me off. It was along Johnson's lot, about twelve feet from his west line. During the summer, I noticed loose boards in the walk along the east part of Johnson's lot near the hydrant, along in August."

This witness also testified that he gave "notice to the trustees of the condition of this walk." He says: " I went to Mr. Remick; he told me he had nothing to do with the sidewalks; he told me to go to Mr. Upson, and I went right over and told him. He was one of the trustees. He said: I will attend to having it repaired. They were never attended to; never anything done to them after I saw it."

When George Leigh was testifying, in the course of his cross-examination, he said: " I have seen loose boards there on more than one occasion. This time I went over is all I can remember after I fell. I can't tell whereabouts this board was. I am certain it was on Johnson's walk, because there is where I saw loose boards, and on the other walk I never saw any to my knowledge. As near as I can get at it, it was the latter part of April. I didn't complain to anybody of this walk." Thereupon the defendant's council remarked, that the evidence " ought to be stricken out as too remote." The motion was denied, but no exception was taken to the ruling.

When Morris Kilts was giving his testimony, he said that he worked on the street in question under the street commissioner, and that at " some time in August, 1883, I passed along this walk in front of Mr. Johnson's house in company with Mr. Thompson. I should think the sidewalk was built of hemlock. The boards were about four feet long. I should think there were two stringers under it, laid in a little from the end of the boards, four inches, I should think." He was then asked to tell what, occurred to him and Thompson in August while you were passing along there? This was objected to, and an exception taken by

the defendant. The witness answered: " Mr. Thompson and I were walking down there, and a board tripped me. It was on this walk, within six or eight feet of the hydrant " (fols. 18 and 19). This same witness mentions a circumstance as occurring in August, 1883 (fol. 23), when he was walking over the walk with his wife, and he was asked to describe what occurred, and he stated that she fell, and he said that a board flew up.

He says : " I stepped quicker than she did, and it threw her. It was one of those loose boards in the walk ; they were loose during the summer of 1883, a good share of the time. She tripped on about the same spot I did with Mr. Thompson. I think I spoke to Mr. Pardy about it." This same witness, in describing another instance, says : " I saw another man fall about the time of this accident to Mrs. Stebbins." He was asked to describe how Dutzler fell. That was objected to, and the defendant excepted, and the witness answered : " a board threw him ; one of those loose boards in the walk. Happened about this time in front of Johnson's house, and on the west corner of Walnut street. I can't say, positively, about any more. He just struck on his hands."

Apparently, the evidence was received for the purpose of showing the condition of the walk preceding the time of the plaintiff's injuries, and with a view of fixing notice upon the defendant of its condition.

Justice FIELD refers to the case of City of Chicago *v.* Powers, 42 Ill. 169, and quotes appprovingly therefrom, viz.: " If another person had met with a similar fate at the same place and from a like cause, it would tend to show a knowledge on the part of the city that there was inattention on the part of their agents having charge of the bridge, and that they had failed to provide proper means for the protection of persons crossing on the bridge. As it tended to prove this fact, it was admissible, and if the appellants had desired to guard against its improper application by the

jury, they should have asked an instruction limiting it to its legitimate purpose." He then cites a large number of cases approving of this class of evidence. District of Columbia v. Armes, 107 U. S. 526.

In speaking of similar testimony offered in Pomfrey v. Village of Saratoga Springs, 5 N. Y. State Rep. 802, the court observes : " That evidence was given apparently to show how she came to know the condition of the walk at that place. But such evidence has been held to be competent." Quinlan v. City of Utica, 11 Hun, 217 ; affirmed, 74 N. Y. 603.

In referring to a similar question in Ster v. Tuety, 45 Hun, 49 ; 9 N. Y. State Rep. 632, nothing contrary to the principle of the cases we have already referred to was asserted.

*Fourth.* We think the court committed no error in refusing the nonsuit of plaintiff ; that the verdict is supported by the evidence, and ought not to be disturbed.

Judgment and order affirmed, with costs.

MERWIN, J., concurs ; MARTIN, J., not acting.