(39 App. Div. 443.)

### O'HARA v. CITY OF BUFFALO.

(Supreme Court, Appellate Division, Fourth Department. March 22, 1899.)

1. CONTRIBUTORY NEGLIGENCE—JURY—MUNICIPALITIES.

Plaintiff, about 6:30 o'clock of a dark night, fell into an open trench leading from the main sewer in the street, across the sidewalk, to a building facing the street. The street had been torn up for some time, and the lateral trench had been open for eight days. Plaintiff lived about 200 feet from the place of the accident, and knew that the street was torn up, but did not know of the lateral trench. There was a red light in the street 15 feet away, and an electric light 35 feet away, but the view of the trench was obscured. There was no guard at the trench, but the dirt was piled up across the sidewalk, 18 inches high, and on each side of the walk were piles of dirt; the walk having been cleaned for about 2 feet in the center. *Held*, in an action against the city for damages, that the question of contributory negligence was for the jury.

2. SAME—EXCAVATION IN SIDEWALK.

A city is guilty of negligence in allowing a dangerous excavation in a sidewalk to remain unguarded and without a light to warn travelers in the nighttime.

3. SAME—NOTICE OF DANGER.

Where a private citizen excavates a sewer through a sidewalk, and allows it to remain unguarded for eight days, it was sufficient to justify a jury in finding that the city authorities ought to have known of the dangerous situation.

Follett and McLennan, JJ., dissenting.

Appeal from trial term, Erie county.

Action by Edward O'Hara against the city of Buffalo. There was a judgment for defendant, and plaintiff appeals. Reversed.

On the 19th day of November, 1895, at about 6:30 in the evening, the plaintiff was walking on the sidewalk in Rhode Island street, in the city of Buffalo, and fell into an open trench leading from the main sewer in the street to a building facing the street. The street had been torn up for some time, owing to the putting in of a sewer, and this lateral trench, which was about six feet in depth, in which was to be placed a private sewer to the building, had been open about eight days. The plaintiff lived on this street, about 200 feet from the place of the accident, and knew generally that the street had been torn up, but had no knowledge of the lateral trench. The night in question was dark and foggy. The plaintiff left his home to go to a store for flour, and to a saloon for beer, and his course took him along the sidewalk, a piece of which had been taken out for the digging of the trench. There was no guard or barrier at this trench, but a red light was placed out in the street, at the end of the ditch, 15 feet from the sidewalk. The electric light, 35 feet away, was lighted, but the view of the trench was obscured by several poles that intercepted the light. The plaintiff's version of the accident is as follows:

"On the morning of the 19th I left the house, as usual, at about a quarter to seven, and worked there that day nine hours, and got back to my home on the night of November 19th about twenty minutes or half past six. This

night it was raining; kind of foggy and very dark. It was a rainy, foggy night. I left my home about half past six, and went to the store for some flour and to the saloon for a pint of beer. I had a little pail in my hand. I walked along there on the side of the sewer until I came to a pile of dirt. Of course, I kept right on going, stepping over the pile of dirt, and stepped right in the hole with my left foot forward, went into the hole first, and then threw myself on my side to save myself, and the bank or whatever was on the other side catched my side here, and broke my ribs,—fractured ribs in front. At the point where I fell in the sewer there was no fence or guard. I walked directly up the sidewalk. It was a wooden sidewalk, and there was some dirt thrown on each side of it. The sidewalk had been cleaned off, probably a couple of feet,—that is, in the center part of it, for probably two or three feet,—and the dirt seemed to be on each side of the sidewalk, anyway, for two or three feet there. Then there was a little pile of dirt in front about eighteen inches. I should judge along there from here fifteen; maybe more than eighteen. There was a light at the car track, I noticed, but I did not pay any attention to anything else. I knew the character of the sidewalk at that time on this side of the ditch, but I did not know it on the other side at that time; that is, on Rhode Island street."

The plaintiff was nonsuited at the trial, on the ground that he was guilty of contributory negligence. This action was commenced May 18, 1896.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, McLENNAN, and SPRING, JJ.

George S. Van Gorder, for appellant.
Henry W. Killeen, for respondent.

SPRING, J. The plaintiff was a laboring man, living on Rhode Island street, in the city of Buffalo. In November, 1895, he was working on the Ellicott Square Building, which is two miles from his home. He was accustomed to leave for his work early in the morning, returning after dark, so he had only a general knowledge of the torn-up condition of the street. He knew a main sewer was being put in the street, and that the street was dug up for that purpose, but testified he was ignorant of the lateral trench running from the main sewer into the new building fronting on the street. There was no guard or barrier or light at the point where this excavation intersected the walk, and a traveler using the sidewalk was dependent for light upon that coming from the electric lamp, which was in a measure obscured by the intervening poles. The earth that had been thrown upon the sidewalk from the excavation had been partially removed, leaving a clear space in the center of the walk, of about 2 feet in width, with dirt upon each side. This was the condition towards the trench, except that the dirt immediately adjacent to it was allowed to remain, leaving a pile extending across the walk of from 15 to 18 inches in height. The plaintiff observed this pile of dirt, and stepped over it and into the ditch, sustaining severe injuries.

It is evident the defendant was guilty of negligence in permitting this dangerous excavation to remain unguarded and without a light to warn travelers of the situation. The trend of authority is harmonious that the duty is urgent upon municipal authorities to guard the streets and highways, for the protection of people using them, where improvements are in progress. Turner v. City of Newburgh, 109 N. Y. 311, 16 N. E. 344; Pettengill v. City of Yonkers, 116 N. Y. 558, 22 N. E. 1095; Bryant v. Town of Randolph, 133 N. Y. 79, 30

N. E. 657; Brusso v. City of Buffalo, 90 N. Y. 679. And assuming this lateral sewer was excavated by a private individual, instead of under the direction of the city authorities, its existence for eight days in its unprotected condition was amply sufficient to justify the jury in finding that the authorities ought to have known of its situation. Turner v. City of Newburgh, supra; Kunz v. City of Troy, 104 N. Y. 344–349, 10 N. E. 442.

The trial court granted the nonsuit on the ground that, when plaintiff ascertained the pile of dirt across the sidewalk, it was his duty "to stop and find out what it was," and his omission to do this constituted contributory negligence as a matter of law. While the case is a somewhat close one, I am convinced this was error. The question of contributory negligence can never be determined abstractly, but its solution is always dependent upon the circumstances surrounding the accident. What may charge a wayfarer with carelessness in one instance, in another may render him free from any imputation of that kind. In this case we start with the proposition, clearly demonstrated at the termination of plaintiff's case, that the city was negligent. That patent fact must be taken into consideration when we are considering the conduct of the plaintiff. The city had permitted an unguarded excavation, six feet deep, to remain for eight days, without a barrier, without a light, without anything to warn or to indicate to an approaching traveler that he was liable to be precipitated to the bottom of this trench. Again, the wayfarer was lawfully upon the sidewalk; he was not called upon to anticipate danger; he had a right to assume the way was safe, and that the municipal authorities had fulfilled their duty to keep the street in a suitable condition for the public to travel upon. This is not a mere perfunctory declaration of the courts, but it is a vital principle, mitigating the vigilance often exacted of a person under other circumstances. The rule is well stated by Judge Finch in McGuire v. Spence, 91 N. Y. 303, at page 305:

"He who approaches a railroad crossing approaches a place of danger, and he must look and listen, for he is bound to anticipate a possible harm. But one who passes along a sidewalk has a right to presume it to be safe. He is not called upon to anticipate danger, and is not negligent for not being on his guard. Whoever left this area in the sidewalk open and uncovered was guilty of a positive wrong. It amounted to an obstruction of the street. It was a trap set for the unwary, or for those hurried or inattentive. Nobody was bound to anticipate its existence or to look for it, although it was visible. The plaintiff, therefore, was bound to no special care to avoid such an accident as happened, and the jury were justified, on the facts, in finding her free from negligence."

Chisholm v. State, 141 N. Y. 246, 36 N. E. 184; Scanlon v. City of Watertown, 14 App. Div. 1–5, 43 N. Y. Supp. 618; Pettengill v. City of Yonkers, 116 N. Y. 558–564, 22 N. E. 1095.

This principle extending protection to the traveler in a street has been held to be operative even though he was familiar, in a general way, with the dangerous condition of the street, but his attention was temporarily diverted elsewhere. Driscoll v. Mayor, etc., 11 Hun, 103; Evans v. City of Utica, 64 N. Y. 166. The plaintiff was approaching a dangerous excavation, of which he was ignorant. He

was where he had a right to indulge the presumption that no peril was to be apprehended. The conditions surrounding him, instead of arousing suspicion of danger, might well have confirmed the assumption that the way was safe. The dirt had been taken off the middle of the walk, leaving a clear space of two feet in the center, indicating that this was designed for the traveling public. Why leave that open space unless intended for that purpose? He knew the street had been torn up, a sewer pipe laid, and the dirt in the main thrown back into the trench; so, apparently, there was no obstruction to his course. In this situation we cannot say, as a matter of law, that he was negligent because he did not regard this fringe of dirt as a warning of danger. This was for the jury to decide. Weed v. Village of Ballston Spa, 76 N. Y. 329; Driscoll v. Mayor, etc., 11 Hun, 101; Schafer v. City of New York, 154 N. Y. 466–471 et seq., 48 N. E. 749. The learned trial judge laid much stress upon the location of the red light. This light was at the end of the trench in the street, 15 feet from the sidewalk. It gave no light at the sidewalk, and, while a warning to a traveler in the street of the existence of danger, it gave no such notice to a traveler on the walk. It might be said that it was rather an assurance of safety; for, if the city authorities were protecting people from perilous places, this protection would be expected to be extended to the sidewalk, as well as in the center of the street. The authorities cited by the counsel for the defendant are principally where the dangers are obvious, and in that class of cases an entirely different measure of prudence and care is required from the traveler.

The judgment is reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur, except FOLLETT and McLENNAN, JJ., dissenting.

FOLLETT, J. (dissenting). Rhode Island street extends east and west in the city of Buffalo, and is crossed at right angles by West Utica street. When the accident occurred, the plaintiff lived at No. 403 on the north side of Rhode Island street, which is about 200 feet west of the place where the accident occurred, which was just east of West Utica street, and in front of the northeast corner lot on these streets. During several days prior to the accident a main sewer was being constructed in Rhode Island street east of West Utica street, a deep trench being excavated to receive the sewer pipes. At the date of the accident this trench was not completely filled, but was partly open for some distance immediately east of West Utica street. On the northeast corner lot on these streets a building was in process of erection, from which the owner had, about eight days before the accident, opened a trench five or six feet deep, extending south from the building to the Rhode Island street sewer. This trench was opened to receive a lateral sewer pipe connecting the new building with the Rhode Island street sewer, and a section of the north sidewalk on that street was removed in opening the private trench, and left open for about eight days without being barricaded. This was gross negligence on the part of the city. A short distance east of the point where the lateral trench crossed the sidewalk, and on the north side of Rhode Island street, was Farnham's saloon. The plain-

tiff is a laborer, and at the time of the accident was working on the Ellicott Square Building, about two miles away from his residence. At about half past 6 o'clock in the evening of November 19, 1895, about an hour after sunset, having returned from his day's labor, he left his house, and walked east along the north side of Rhode Island street on his way to Farnham's saloon to get a pail of beer. He describes the night as rainy, foggy, and dark. He proceeded on his way east on the north side of the street until he reached the lateral trench. Before he reached the trench he discovered that there was dirt thrown on each side of the walk, leaving a clean place in the center of the walk about 2 feet wide for footmen. As he reached the lateral trench he saw a pile of dirt extending clear across the sidewalk on the west side of the trench, which was about 15 or 18 inches high. He testified that he did not stop, but stepped right over the pile of dirt, and into the lateral trench beyond, and sustained severe injuries. There was no guard or barrier on either side of the lateral trench, but at the west end of the main trench in Rhode Island street there was a red light which was about 15 feet southwest of the place where the lateral trench crossed the sidewalk. About 35 feet from the place of the accident was an electric street light, but near it stood a lamp post, a telegraph post, and an electric railway post, which, it is asserted, cast shadows on the sidewalk at the place of the accident. At the close of the plaintiff's case he was nonsuited on the ground that he negligently contributed to the accident. It is true that a person traveling on the sidewalk of a city street is not bound to anticipate that obstructions will be left thereon or therein which will make it dangerous to proceed, and a traveler is not required to be constantly vigilant to discover defects; but if he does discover a defect he must exercise due care not to suffer injury from the discovered defect. When this plaintiff saw, as he did, some feet west of the point of the accident, that dirt was piled on the sidewalk, and when he reached the west side of the lateral trench, and further saw a pile of dirt, 15 or 18 inches high, lying clear across the sidewalk on which he was walking, he had notice that the walk was obstructed, and he ought to have stopped and ascertained its extent and nature before attempting to step over it without examination, thought, or care. In proceeding without hesitation or examination the plaintiff was negligent, and his negligence directly contributed to cause the accident for which he seeks to recover damages. This is a hard case, and probably a border case, but it seems to me that the nonsuit was right, and should be sustained. The plaintiff, though he lived within 200 feet of the place where these excavations had been going on for days, testified that he had little or no knowledge of the condition of the street. A building was being constructed there, and a main sewer was being laid in Rhode Island street, and it is difficult to believe that the plaintiff was without previous knowledge that the street was torn up. The learned trial judge evidently did not believe that the plaintiff was without previous knowledge of the condition of the street. This opinion was undoubtedly formed, not only from the testimony given by the plaintiff, but by his manner on the stand. The atmosphere which surrounds a jury trial cannot be produced before

an appellate court, and in a close case the discretion of the trial judge
should not be lightly disregarded.    I think the judgment should be
affirmed, with costs.

McLENNAN, J., concurs.