(42 App. Div. 582.)

## MORGAN v. VILLAGE OF PENN YAN.

(Supreme Court, Appellate Division, Fourth Department.   July 18, 1899.)

1. TOWNS—OBSTRUCTION IN STREETS.
Where village trustees consent to the use of the streets by a steam-heating corporation, and authorize the excavation of trenches for the purpose of placing the pipes, the town is not liable to a person injured by a pile of earth left in the street at night without proper lights, unless it has actual knowledge that the street was not sufficiently guarded at the time of the accident.

2. SAME—NOTICE.
Where a steam-heating corporation, excavating in the streets of a city by permission, regularly put out lights at night to guard the excavation, there could be no notice of negligence, to the town, on the part of the employés of the heating company, in failing to put out lights on the evening of, and before, the accident.

3. SAME—CONTRIBUTORY NEGLIGENCE.
Where plaintiff knows of excavations in a street, and of piles of earth, he is guilty of contributory negligence where he drives at a good trot down the street on a dark night, and where the lights which generally guard the excavations are absent, and cannot recover for injuries received by driving over a pile of earth.

Appeal from trial term, Yates county.

Action by Charles W. Morgan against the village of Penn Yan. Judgment for plaintiff.   Defendant appeals.   Reversed.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and NASH, JJ.

John Gillette, for appellant.
M. A. Leary, for respondent.

NASH, J.   Action for alleged negligence of the defendant.   The village of Penn Yan gave to Clarence T. Birkett and others a franchise for a system of steam heating for the use of its citizens.   The board of trustees, by resolution, gave their consent to the use of the streets of the village for the purpose of installing the system, upon the following conditions, among others:

"Said Birkett shall, during the construction of such system of steam supply, properly guard and protect all openings and trenches, and be responsible for all damages to individuals.   All the work pertaining to the excavating and filling of said trenches and the replacing of the walks and highways shall be done under the supervision and direction of the street commissioner of the said village; and said Birkett, his successors or assigns, shall pay him for such supervision at the rate of two dollars per day for every day actually spent at such work."

In the progress of the work a ditch was opened on the west side of Main street, about 11 feet from the curb, some 5 feet in depth, and the earth thrown out and piled on the east side; leaving a passage in the street sufficient for two teams to meet and pass each other.   At different points along the line, each 100 feet apart, it was necessary to cut out a square hole, much wider than the ditch, to receive an intake pipe, and accommodate the needs of the system as planned; and hence at such points larger and higher piles of dirt were deposited.   These were at a height of about 4 feet, and

extended out into the street some further than the line of the general pile or ridge. The accident occurred by reason of the plaintiff driving the wheels of his wagon against one of these piles of dirt. It appears from the uncontradicted evidence that rules were adopted by the company putting in the steam-heating plant in respect to the safety of the public using the street during the performance of the labor, and that the same were complied with in such manner as that all precautions usually observed, and such as were necessary for such purpose, were taken to guard and light the work at night, and the pile of dirt in question was so guarded and lighted. The accident occurred early in the evening, but after dark; and there is evidence tending to show that the lights were not put out on the evening of the accident until after dark, and after the accident occurred. The case was submitted to the jury upon the theory that it was the duty of the village to guard the excavations and piles of dirt in such manner as would not expose the traveling public to unnecessary danger while using the streets, the same as if the excavations had been made by the village for its own purposes.

The defendant's counsel requested the court to charge the jury that:

"In order to make the defendant liable, it was necessary for the evidence to show affirmatively that the defendant, by its officers, had notice that no lights, barrier, or other warnings existed at the place of the accident at the time of the accident, and for a sufficient time before to enable it to provide such."

The court declined such request to charge, to which ruling the defendant duly excepted.

The court was also requested to charge that:

"The licensees of the defendant, Birkett and others, having had charge of the work of excavating and filling the ditches, the defendant is not responsible to the plaintiff for the manner of their work thereon, nor for the negligence in not barricading, or lighting red lamps, at the time of the plaintiff's injury, unless the defendant had actual knowledge, personal or implied, that the dirt and ditches were not sufficiently guarded at the time of the accident."

The court declined such request to charge, to which ruling defendant duly excepted.

This, we think, was error. The defendant was entitled to have the jury charged as requested. The case of McDermott v. City of Kingston, 19 Hun, 198, is very much like this. The action was brought to recover damages sustained by the plaintiff's intestate in falling in the night into a ditch excavated in one of the streets of the city of Kingston by a gas company, which had been negligently left unguarded. By the charter of the city the common council had power to do what was done in this case by the trustees in their resolution granting the franchise,—to regulate and superintend the exercise of the laying of gas pipes, and to require any corporation or company laying such pipes to keep proper signal lights burning at night at all holes or ditches which may have been rendered dangerous to persons traveling in the streets or highways. Held that, to render the city liable for the injuries, it must appear that not only the accident resulted from the negligent manner in which the excavation was made and left, but also that the city had notice, actual or constructive, thereof. The fact that an alderman of the

city saw the excavation being made is not, per se, evidence that the
city was guilty of negligence. The rules which govern the liability
in such cases are stated by Boardman, J., as follows:

"For any obstruction or defect created by the city, for its own purposes, in its
streets or its sidewalks, whereby persons are injured, the city will be liable,
if the injury be due to the negligence of the city officials or employés. The
same result follows if the work on the streets or sidewalks be done by others
by the consent and under the supervision of the city authorities. If a tres-
passer obstructs the ways of a city, whereby an injury occurs to an individual,
the city will not be liable, except after notice, actual or constructive, and neg-
lect to put the street in good condition after such notice. But if the work be
done by the consent only of the city, and not under its immediate supervision,
the city will not be liable for the negligence of those doing the work, but only
for its own negligence in not correcting the evil after notice, actual or con-
structive."

Judge Boardman is supported by the authorities. In Masterton v.
Village of Mt. Vernon, 58 N. Y. 391, it was held that where the offi-
cers of a municipal corporation, in pursuance of a lawful authority,
give permission to a lot owner to connect his lot with a sewer, such
officers are required to exercise reasonable care to prevent injury,
and for the omission thereof the corporation is liable; but, in the
absence of any want of proper care upon the part of its officers, it
is not responsible for the negligence of those employed by the lot
owner to do the work. In Turner v. City of Newburgh, 109 N. Y.
301, 16 N. E. 344, where the city was held liable for an injury sus-
tained by reason of a defect in a sidewalk left by a contractor whose
work had not been accepted, and a sufficient length of time had
elapsed to charge the city with notice, the rule was recognized that,
where the unsafe condition is caused by some other than municipal
agency or instrumentality, negligence is not imputable until a suffi-
cient time has elapsed to charge the municipal officers with notice.
In Pettengill v. City of Yonkers, 116 N. Y. 558, 22 N. E. 1095, cited
by respondent's counsel, the court used this language:

"The plaintiff was entitled to recover by showing to the satisfaction of the
jury either a dangerous obstruction created by the city, and left unguarded, or
an obstruction created by some third person, and left unguarded by the city
after notice of its existence."

The work pertaining to the excavating and filling the trenches
required to be done under the direction and supervision of the street
commissioner did not give to the street commissioner charge of the
physical part of the work that was under the direction of, and per-
formed by, Birkett and his employés. Supervision and direction of
the work as it should affect the streets and sidewalks were all that
was required of the street commissioner. He assumed the duty, as
street commissioner, of directing that the excavations be protected
by barricades and lights. Assuming that this was part of his duty,
there is no evidence of negligence on his part, and his testimony
is that he faithfully performed his duty. The testimony of both
plaintiff's and defendant's witnesses is to the effect that the lights
were regularly put out. The evidence is conflicting only as to
whether or not they were put out on the evening in question before
the accident. Under the circumstances of the case, there was no
opportunity for notice to the defendant of the negligent act of Bir-

kett's employé, if there was negligence, in not putting out the light on the evening of, and before, the accident.

We think, also, it was error to submit to the jury the question as to whether or not the plaintiff's negligence contributed to the accident. He lived on the same street. His testimony is:

"I had seen these different piles or bunches of dirt many a time. I had seen the heaps and piles of dirt, and knew just where they were, for days, and knew just where the ditch was for days. I had walked by there during evenings. On that night there wasn't a light on the ditch,—there wasn't any in sight,—and there was no electric light that night. I can't recollect any other night when that was so. I am not prepared to say how it was other nights. I have seen them different nights in that position as I have gone along. I drove up Main street that night as I always do drive,—carefully. I drove on a trot. It was just an ordinary trot,—just a jog. It was pretty dark on the street after I passed all the stores and got up into a dark neighborhood. Where these heaps of dirt were, it was so dark I could not see. I didn't see until I struck this pile. When in the wagon, I was driving my horse with two hands, and had both hands on the lines. I now have a recollection of the gait at which I was driving. I didn't stop anywhere to look before I struck the piles. This mare that I drove took a jog. It was a jogging gait. It was a jog until the collision. I didn't stop on a walk. I knew I was coming to the place where these heaps of dirt were."

The testimony of Miss Smalley, who was riding with him, is:

"I started to ride from the store of McMath & Morgan to my home with Charles Morgan. As near as I can remember, I got into the buggy and rode with Mr. Morgan, and we drove up Main street. The first thing we knew, we struck this pile of dirt; and he tried to hold the lines and get straightened up, but he went out. The horse was going just a natural gait. It wasn't going fast. It was going on just a good trot. We were talking to each other as we came along the whole distance, and our horse was on a trot. It wasn't going fast. It was going along as anybody's horse would; just an ordinary trot,—an ordinary gait. It was not a little bit faster than ordinary. There was not the least change in the manner of his driving from the street until he struck this pile of dirt. It was a steady drive. I didn't notice where the wheel struck. I didn't look at it or think anything about it. I don't know as I was thinking particularly about the street, and the first idea I had of any danger at all was when I struck the heap of dirt. I suppose we were talking up to that time."

The plaintiff does not testify that he used any care whatever in driving along by the side of the ridge and piles of earth which he knew were there, although it was very dark, and the lights which he had observed there evenings before were absent. He drove right along on a "good trot," in the passageway left for teams,—narrow and dangerous, as he knew,—without so much, so far as the evidence shows, as giving these piles of earth a thought, until he struck one of them and was overturned. This, it seems to us, within the well-settled rules applicable to cases of this character, was such negligence as to preclude a recovery.

Judgment and order reversed, and new trial ordered, with costs to the appellant to abide the event. All concur; SPRING, J., in result.