(117 App. Div. 887)

STRATTON v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. March 22, 1907.)

MUNICIPAL CORPORATIONS—INJURIES TO PEDESTRIANS—DEFECTIVE SIDEWALKS —QUESTIONS FOR JURY.

A city maintained a concrete incline, from a curb 6 inches high, to a cross-walk, and extending 18 inches from the curb. A pedestrian was injured while stepping on the incline. *Held*, that the questions whether the city was negligent in maintaining the incline, and whether the pedestrian was guilty of contributory negligence, were for the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, §§ 1748, 1754.]

Gaynor and Jenks, JJ., dissenting.

Appeal from Trial Term, Kings County.

Action by Fannie P. Stratton against the city of New York. From a judgment of dismissal, and from an order denying a motion for a new trial made on the minutes, plaintiff appeals. Judgment and order reversed, and new trial granted.

Argued before JENKS, HOOKER, GAYNOR, RICH, and MILLER, JJ.

Charles P. Cowles (Justus A. B. Cowles, on the brief), for appellant.

James D. Bell, for respondent.

RICH, J. We think plaintiff's complaint was improperly dismissed. She was seriously injured by a fall upon an obstruction at a crossing on the corner of Flatbush avenue and Dean street, in the borough of Brooklyn. It appears that the gutter had been filled with concrete

several years before the accident, as a convenience to enable an occupant of one of the stores fronting upon this crossing to draw his wagon out of the street. The curb, at this point, was six inches high above the gutter. The construction extended from the top of the curb, arching a little and sloping eighteen inches from the curb to the pavement of the street. It was six or seven feet long, and had remained in that condition until the day of the accident, except that its surface was worn smooth. The accident happened on a bright, clear day, and plaintiff might have seen it had she looked. It may be that she failed to exercise care, and that she ought to have avoided this place. Her evidence tends to show that, as she placed her foot upon the smooth surface of this construction, it slipped, causing her fall and injury. She was looking ahead into the street at the time; but we cannot say, upon the evidence before us, as matter of law, that she was negligent in not observing the condition. She had a right to assume that the crossing was in a reasonably safe condition, and the question as to her negligence was, in the first instance, for the jury, providing there was evidence from which a finding of negligence on the part of defendant could be based.

Judge Gray, in Turner v. City of Newburgh, 109 N. Y. 301, 305, 16 N. E. 344, 345 (4 Am. St. Rep. 453), says:

"Municipal governments owe to the public the specific, clear, and legal duty of putting and maintaining the public highways which are in their care, or under their management, in a good, safe, and secure condition, and any default in making them safe and secure, or in so maintaining them, if occurring through the negligence of the officials, upon whom a duty is devolved by law, will render the city liable. Where the unsafe condition occurs through some other agency or instrumentality, negligence is not imputable until a sufficient time has elapsed to charge the city officials with notice."

This obstruction had been there for over six years. There is no evidence that it was placed there by the city. It does appear, however, that other persons had fallen there, and sufficient time had elapsed to charge the officials of the city with notice of the condition. As to whether it was a dangerous obstruction, and whether the defendant was negligent in permitting it to remain in that condition, were questions of fact that ought, in the view we take of the other question in the case, to have been submitted to the jury.

Judgment and order reversed, and new trial granted, costs to abide the event.

HOOKER, J., concurs.

MILLER, J. (concurring). I concur in the opinion of my Brother RICH. The incline was intended for a driveway where none existed. It was at the intersection of two streets where the sidewalk dropped to the cross-walk. It was unusual, and there was nothing to warn pedestrians to look out for it. The plaintiff expected a perpendicular drop, as any one would. Instead her foot came in contact with the smooth, slippery, oval surface of the concrete, and she fell. Of course, if she had been going in the other direction, it would not have done any harm; but, in the direction she was going, she was not likely to see

it, even had she been using unusual care. I fully agree with my Brother GAYNOR on the proposition that the same rule must be applied to the defendant as to the ordinary affairs of men, and that of necessity there will be slight defects and irregularities in streets and sidewalks which it is not required to remove; but this rule does not permit the defendant to set traps for pedestrians, and I think that at least it was for the jury to say whether a man of ordinary prudence would have anticipated what happened to the plaintiff.

GAYNOR, J. (dissenting). From the curb there was a concrete incline, six feet wide, down to the cross-walk. The curb was six inches high, and the concrete incline extended out on the cross-walk eighteen inches, measured at its base. This was no obstruction, but a gradual and easy decline from curb to cross-walk. It would be more fit to call it a convenience than an obstruction. No prudent person on seeing it would consider it a dangerous obstruction, and that is the test of liability. To call it such is a refinement that cannot be applied to the ordinary affairs of men. Moreover, the plaintiff did not slip on it; she says that her foot or ankle turned as she stepped on it; and this because of the slight downward slope of her foot. I do not see why it is reiterated that the slope was for a driveway; there is no such evidence. Such declines at crossings are not at all unusual.

The judgment should be affirmed.

JENKS, J., concurs with GAYNOR, J.