### ORSER v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. June 29, 1908.)

1. APPEAL AND ERROR—REVIEW—QUESTIONS OF FACT—NONSUIT.
   On appeal from a nonsuit, plaintiff is entitled to the most favorable construction that a jury might have placed on the evidence.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, § 4024.]

2. MUNICIPAL CORPORATIONS—OBSTRUCTOINS IN STREETS—ACTIONS FOR INJURIES—QUESTIONS FOR JURY.
   In an action for injury to a pedestrian, who fell over a stone in the street, whether the stone had been at the place of accident a sufficient length of time to give constructive notice to the city *held* for the jury.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 1750.]

3. SAME—CONSTRUCTIVE NOTICE OF DEFECT.
   The mere fact that a stone in the street, over which a pedestrian fell and was injured, had been in different positions, did not prevent there being notice to the city that the stone was in the street and a menace to travelers.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, §§ 1647-1649.]

4. SAME—ISSUES, PROOF, AND VARIANCE.
   A variance between the evidence, in an action for injury to a pedestrian, who fell over a stone in the street and was injured, and the allegations of the complaint, as to the particular corner where the stone was, is not important, and, all the evidence on that point having been received without objection, the complaint may be deemed to have been amended in harmony therewith.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 1722.]

Appeal from Trial Term, Kings County.

Action by Margaret D. Orser against the city of New York. Judgment for defendant, and plaintiff appeals. Reversed, and a new trial granted.

Argued before WOODWARD, JENKS, HOOKER, GAYNOR, and RICH, JJ.

Charles H. Luscomb, for appellant.

James D. Bell (Edward Lazansky, on the brief), for respondent.

WOODWARD, J. The plaintiff, a married woman about 40 years of age, was injured by falling over a stone conceded to be 14 to 16 inches long and 6 to 8 inches in height, which occupied a place in Atlantic avenue at the intersection of Smith street, in the borough of Brooklyn, at the time of the accident. At the close of plaintiff's case, on motion of defendant, the complaint was dismissed, on the ground

that the plaintiff had not established facts sufficient to constitute a cause of action, in that it was not shown that the obstruction had been at the place of the accident a sufficient length of time to give constructive notice of the danger to the defendant, for it was not claimed that there had been any actual notice given to the city of New York. The plaintiff has been nonsuited, and upon this appeal is entitled to the most favorable construction which a jury might have placed upon the evidence, and we are of the opinion that the court erred in granting the motion for the dismissal of the complaint.

This court will not fail to take notice that the intersection of Smith street with Atlantic avenue is a busy point; that it is much traveled, and is almost hourly in the view of members of the police force; and it can hardly be questioned that a stone of the dimensions which are conceded would not constitute a dangerous obstruction to the highway, one which the proper authorities are bound to remove in the discharge of their duty to maintain the highways in a reasonably safe condition for public travel. Plaintiff's witness Tierney testified that the accident happened at half-past 5 or a quarter to 6 on the 12th day of January, 1905; that he saw the plaintiff after she fell, and while she was being picked up; that he saw a stone there, and "it was about 12, 14, or 16 inches long and about 6 inches thick"; that Atlantic avenue is not paved with asphalt, but with cobblestones; that he did not know where this stone came from; that he saw it up against the pole before the accident happened at all; that he saw—

"the stone there for quite some time before the accident. More than a week going on two weeks, I noticed such a stone there. I had remarked about it before. I could not swear that it was a part of the pavement. It was not taken up on that side. It was a loose stone. * * * During the time I saw it there it was between the pole and the electric light, between the car track and the crossing, about 4 or 5 or 6 feet, I judge, from the curb, and about 2, 2½, or 3 feet from the crosswalk. I saw it two or three weeks before this accident. There was no other stone there."

On cross-examination the witness said:

"I saw the stone there two or three weeks before this accident. I did not say that it was right in this same spot all of that time. I do not know that this stone was at the spot I saw it this night, for a half an hour before this accident happened. The last time I saw the stone, it was up against the telegraph pole. I did not see this stone, which I saw after this lady fell, in that position, 15 minutes before the accident. I could not swear where it was. For all I know some little boy might have taken that stone from alongside the telegraph pole and carried it out there. All I am ready to say is that I have seen around there some kind of a stone. I could not prove whether it was the same stone or not. All I will say is, that around that corner, the southwest corner of Smith and Atlantic, for some time prior to this date, I saw a stone, and it was not in this position, where this lady fell, all the time that I saw it. At various times I saw it up against the telegraph pole. * * * I saw the stone in that position where the lady was picked up the day before the accident. I put it over toward the curb myself the day before. I saw the stone the day before, up against the pole. * * * I put the stone there myself. * * * I could not swear that that was the stone I had taken from the roadway and put up against the pole the day before; but the stone called my attention, I saw it there so long, and I moved it over. I won't say whether it was the stone this lady fell over. The day before I had taken a stone from the roadway and placed it up against the telegraph pole over toward the gutter, and when I took that

stone away the day before from the roadway, and put it up against the telegraph pole, there was no other stone around that part of the street."

While it is true, perhaps, that this witness is not as positive as he might be, it seems to us that reasonable minded men, listening to all the testimony, might reach the conclusion that this particular stone—no other having been shown to have been there at any time—had been in the highway at a busy corner, where there was no apparent need of it, and where it was a constant menace to those lawfully using the highway, and the fact that it may not have been in the particular spot all of the time is beside the question. The fact, brought out by counsel for the defendant, that for all the witness knew the stone might have been brought from its place near the telegraph pole and placed in the particular spot, has nothing to do with the question of notice to the defendant, and this appears to have been the basis on which the nonsuit was granted. If this stone had been in the highway, at or near this corner, for a period of two or three weeks, where the witness had seen it in various positions and had himself taken it out of the driveway, and where it was liable to be carried out by children, or pushed out by passing vehicles, there was a question for the jury whether this stone was not large enough to constitute a dangerous menace to persons lawfully using the highway, and whether its presence loose in the street for two or three weeks was not enough to give notice to the defendant. This is not the case of a permanent stone used for a carriage block, or for preventing encroachment upon the trees or grass plots, but is a loose stone, serving no useful purpose, so far as appears, and which was not only large enough to trip up and injure the plaintiff, but which was obviously of sufficient size to constitute a stumbling block.

This accident occurred at early candlelight on a dark, rainy day, and it should have been plain to any man of ordinary intelligence that a stone of this character and size was dangerous, not alone to pedestrians, but to teams, and whether it was in the exact position where the plaintiff, in her misfortune, found it, can have no bearing upon the question of notice. If it was anywhere in the immediate locality of the accident for a period of three weeks, being shifted by the traffic or by the voluntary acts of people, it was for the jury to say whether there was notice to the defendant, and it was error to refuse the plaintiff an opportunity to have the fact determined. This, it seems to us, is the doctrine to be deduced from Turner v. City of Newburgh, 109 N. Y. 301, 306, 16 N. E. 344, 346, 4 Am. St. Rep. 453, where the court say:

"What would be a sufficient length of time to charge the city officials with negligence is a question of fact for the jury to consider and decide, in view of all the circumstances disclosed by the proofs; for in different cases what would be a sufficient length of time might vary in the judgment of men."

The mere fact that this stone was in different positions does not, it seems to us, prevent there being notice of the fact that the stone was in the highway and a menace to travelers, and the evidence, in so far as it varies from the allegation of the complaint as to the par-

ticular corner, is not important. All the evidence was received upon this point without objection, and the complaint may be deemed to have been amended in harmony with the proofs.

The judgment appealed from should be reversed, and a new trial granted; costs to abide the event. All concur.